James P. Monahan, Administrator, Appellee, v. Fidelity Mutual Life Insurance Company, Appellant.

Gen. No. 14,469.

1. INSURANCE—*when incontestable clause becomes effective.* Notwithstanding it is provided in the contract of insurance that a policy shall not become binding until actual payment of the final premium, yet the policy (the first premium having been actually properly paid) becomes effective for all insurance purposes and the incontestable clause operates from the day of its date.

2. INSURANCE—*when forfeiture clause is self-executing.* A provision which specifies that "if any premium be not paid when due * * * this policy shall be void until duly re-instated," is self-executing, but such a forfeiture incurred, as well as the right to declare a forefeiture, may be waived.

3. INSURANCE—*effect of waiver of forfeiture.* Upon the waiver of a forfeiture incurred the parties are restored to their original rights and the performance proceeds under the old contract, a novation not being deemed to have been entered into.

4. INSURANCE—*when running of limitation of incontestable clause not tolled.* If a policy is provided to be incontestable after the lapse of a stipulated period, the fact that during such period a forfeiture has been incurred and waived, does not toll the running of such limitation.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed April 20, 1909.

WHEELER, SILBER & ISAACS, for appellant; MARTIN J. ISAACS, of counsel.

SAMUEL B. KING and JULE F. BROWER, for appellee.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

A judgment was recovered against appellant, the Fidelity Mutual Life Insurance Company, of Philadelphia, Pennsylvania, for $3,275, by appellee, James P. Monahan, as administrator of the estate of Patrick H. Fay, deceased. This appeal by the Insurance Company brings up that judgment for review. The action was assumpsit on an insurance policy upon the life

of the decedent. Various defenses were interposed
by the company, but it is not necessary for us to con-
sider these, because the policy contains a clause as fol-
lows: ''If this policy shall have been in continuous
force after two years from the date hereof, it shall, in
the event of the death of the insured, be incontestable
for the sum payable hereunder, except for non-payment
of premium.'' The policy bears the date of September
30, 1903. The company advanced no defense of which
it could avail itself if the policy had been in force for
two years continuously when Patrick H. Fay died. He
died October 19, 1905.

In order to avoid the effect of the above quoted pro-
vision in the policy appellant contended: First, that
the policy had not been in force two years when Fay
died. This contention was based upon the circumstances
that, while the policy was dated September 30, 1903,
it was, in fact, not issued and delivered until October
30, 1903. Second, it was contended that, should it be
considered that the policy had been in force two years,
yet there was no liability, because the policy had not
been in force continuously for two years. This conten-
tion was based upon the fact that the second premium,
payable September 30, 1904, was not paid until October
1, 1904. These same contentions are now made in this
court.

It appears that under date of September 22, 1903,
Patrick H. Fay made a written application for the issu-
ance of the policy of insurance involved, which appli-
cation is attached to the policy. In the application we
find provisions that: ''the policy issued herein shall
not become binding on the company until the first pay-
ment due thereon shall have been actually received
by the company or its authorized agent during my life-
time and good health,'' and that ''if the necessary
payments be made to keep said policy in force, it shall,
in the event of my death, be incontestable for the sum
payable hereunder, after two years''. In the policy
itself we find, in addition to the provision first above

quoted, the following provisions: that "This contract is made in consideration of the written application of the above-named insured, which is made a part hereof * * * and the payment in advance to said company of one hundred sixty two and 93/100 dollars on the delivery of this policy, and thereafter * * * upon the thirtieth day of the month of September in every year until the premiums for twenty full years shall have been duly paid to the said company"; that this contract "shall not be operative or binding until the actual payment of the initial premium, and delivery of the policy, during the life time and good health of the insured"; that "If any premium be not paid when due * * * this policy shall be void until duly reinstated during the life time and good health of the insured", and that "This policy shall continue in force only during the period actually paid for".

There is some uncertainty as to when the initial premium was paid. No one testified as to when it was paid. A receipt, countersigned by the company's president and treasurer, under date of October 2, 1903, was introduced, showing the payment of that premium. There is no question that the policy was not delivered by the company to the insured until October 30, 1903. The premium for the year 1904 was paid to the company's agent, in Chicago, on October 1, 1904, and he issued a receipt therefor, which receipt was signed by both the company's president and its treasurer. The premium for 1905 was paid on September 16, 1905.

Appellant takes the position that, under this contract of insurance, time began to run, as between the parties, on October 30, 1903, and not on September 30, 1903. We cannot take that view. The contract provides that it shall not "become binding . * * * until the first payment due thereon shall have been actually received" during the life time and good health of the insured, and that the contract "shall not be operative or binding until the actual payment of the initial premium and delivery of the policy, during the life time and good health of the insured". This, as we under-

stand it, means that, unless the initial premium had actually been received and the policy had been issued and delivered during the life time and good health of the insured, the company stipulated that there should, in the first instance, be no contract of insurance between the parties. It provides a point of time, to be fixed by certain acts, prior to which it should not be regarded that a contract existed between the parties; but, it does not provide the point of time whence, after it had become existent, it should have force and effect and whence the term of insurance therein provided for should have its beginning. The twenty years' insurance period provided for in the contract began on September 30, 1903, regardless of when the initial premium was paid and when the policy was in fact delivered; and the annual premium payments likewise began on September 30, 1903. In the law of contracts, it is elementary that ordinarily a contract speaks from the day of its date, regardless of when it was executed and delivered. It is of common occurrence in connection with deeds, leases and other contracts that, while they are not in effect at all and have no legal existence until delivered, yet, in respect to the date of delivery, they, in point of commencement, relate back or commence in the future. Such relation back or forward contravenes no principle of law and is determined by the intent of the parties as deduced from the instrument itself. From the language used, in the application and in the policy, it is clearly deducible that the parties contemplated that the policy should not become operative and in force until there had been both a payment of the initial premium and a delivery of the policy. But from the same language, strengthened by the existence of the date on the policy, which date was agreed upon by both parties and was placed upon the policy by the company itself, the deduction is equally clear that, the initial premium having been paid and the policy having been delivered, the force and operation of the instrument as an insurance policy upon the life of the deceased was intended to begin with September

30, 1903. Any different interpretation would give no effect to the date of the policy; and under the rules governing the construction of contracts, we must, so long as it is possible, adopt such construction as will give effect to every word within the four corners of the instrument.

Counsel for appellant states it as a proposition that a provision in an insurance policy that the "contract shall not be operative or binding until delivery" is a valid and enforceable provision, and to sustain this proposition cites Kohen v. The Mutual Reserve Fund Life Ass'n, 28 Fed. 705; Dickerson v. Prudential Sav. & Life Ass'n, 21 Ky. Law Rep. 611; 52 S. W. 825; Summers v. The Mut. L. I. Co., 66 L. R. A. 812; McCully v. Phoenix M. L. I. Co., 18 W. Va. 782. We find nothing in that proposition or in those authorities inconsistent with the view above expressed. We hold that, while such proposition is valid, nevertheless a policy such as that here involved will, upon delivery, relate back and have force and operation from the day of its date. Consequently, when the insured died, on October 19, 1905, the policy had been in force for two years and more after its date.

The next contention is that the policy had not been in continuous force for two years. This, as already stated, is based upon the fact that the 1904 premium was not paid on September 30th, when due, but on October 1st, the next day. This contention raises a question as to the nature of the transaction between the parties, in connection with decedent's default in that payment and the company's acceptance thereof on the next day. Appellant contends that the acceptance, on October 1, 1904, of the 1904 premium was not "a waiver of a default" but "constituted a reinstatement of the insurance and created for the insured a new period from which the incontestability clause might begin to run. The effect of this reinstatement was to create a new contract of insurance, but founded upon the terms of the old policy." We cannot agree that a new contract of insurance originated from October 1,

1904, and that a new period of insurance then began, terminating at the time the original policy would have terminated. The very use of the term "reinstatement" negatives such idea. We do not overlook the fact urged upon us by counsel that the policy provides "if any premium be not paid when due * * * this policy shall be void until duly reinstated". This provision for termination upon non-payment of a premium is undoubtedly self-executing. A forfeiture incurred or a mere right to declare a forfeiture may, equally, be waived. In either case, equally, a restoration of the parties to their original relation may occur. This restoration may be by an express agreement of waiver by the parties or it may even, without intent, arise by operation of law, i. e., by estoppel, where, by reason of some act or conduct it would be inequitable to enforce forfeiture. Termination for breach of a self-executing contract provision is not peculiar to insurance contracts. After such termination and restoration into the original contract relation both parties proceed in the performance under the original contract and not under a new contract that has its inception after the restoration of the relation.

A waiver is, in Perin v. Parker, 25 Ill. App. 465, 468, S. C., 126 Ill. 201, said to be the relinquishment of a known right. The transaction between the parties upon the default or breach of Fay, in respect to making the 1904 premium payment, is more accurately characterized as a waiver of the termination of the original contract, by the company, than as a creation of a new insurance contract. As appears from the evidence, the minds of the parties did not meet, after the default, upon any terms of an insurance contract but upon the question whether the old contract should be restored or revitalized, that is, whether the termination should be waived by the company, and the policy be reinstated and continued in force and effect. The subject of a waiver of a forfeiture already incurred, in connection with the non-payment of an insurance premium, was

considered in the case of Insurance Company v. Norton, 96 U. S. 234. The court therein said: "The company was not bound to insist upon a forfeiture, though incurred, but might waive it." In that case a part unpaid of the premium was evidenced by a note which, as well as the policy, contained a provision for the termination of the policy by non-payment *ipso facto*. After an interesting discussion of the subject the opinion concludes: "the objection, that the note was already past due when the agreement to extend it was made, is not sufficient to prevent said agreement from operating as a waiver of the forfeiture". Thus it is seen that, from the fact that the policy was already terminated, when the minds of the parties met in respect to the unpaid 1904 premium and that premium was paid, it does not necessarily follow that the contract then entered into was, as a matter of law, a new contract of insurance and not the old one restored. While previous to being restored it was legally dead, yet it was within the legal power of the company to revive it. It appears that, on October 1, 1904, when Fay paid the overdue premium L. F. McCullough, the Chicago representative of the company, asked him, Fay, as required by the company, whether he was in good health and pursuing his usual occupation, to which Fay replied that he was. Thereupon McCullough handed Fay a receipt for the premium as follows:

"THE FIDELITY MUTUAL LIFE INSURANCE COMPANY.

Received $162.93 for annual premium due Sep. 30, 1904, subject to conditions endorsed hereon, under policy of life insurance indicated by number and name.

L. G. FOUSE, President.
O. C. BOSBYSHELL, Treasurer.

PATRICK H. FAY,
        728—218 La Salle St., Chicago, Ill.
    E. 146059—3.
    Countersigned at Chicago, Ill., on the 1 day of October, 1904.        L. F. McCULLOUGH, Cashier."

McCullough reported all this to the company imme-

diately and his report was received by the company on October 5th and approved by the president and secretary on October 6, 1904. Upon this state of facts it is clear to us that the parties entered into no new contract of insurance; but the company expressly and intentionally, with full knowledge, waived the default, restored the original contractual relation and consented to the continuance of the policy, including all the rights, privileges, benefits and advantages existing thereunder and thereby, as if no default had ever occurred. From this it follows that, owing to this waiver and consent of the company, this policy must be regarded as in continuous force from its date until the death of Fay.

Appellant's counsel contends that upon the authority of certain cases, particularly Pacific Mutual Life Insurance Company v. Galbraith, 115 Tenn. 471, and Teeters v. United Life Ins. Assn., 159 N. Y. 411, the cessation and determination of a policy under a self-executing provision of forfeiture for non-payment of a premium and its reinstatement by waiver and consent on the part of the company creates a new contract from the date of the reinstatement. It is true the cases cited so hold. But there can be no general rule governing all cases of termination and reinstatement. Whether the insurance after such termination for default and reinstatement is under a continuance of the original contract or under a new contract must, on principle, depend upon the facts in each particular case. Here the acts and conduct of the parties clearly indicate an intent of a continuance of the original contract with its benefits and advantages, including the running of time, to either of the parties. In Goodwin v. Provident Savings Life Assurance Association, 97 Iowa 226, 238, the court held: "Moreover, the reinstatement was not the making of a new contract, for no new or different terms were agreed upon. It was simply the cancellation of a forfeiture, whereupon the contract was restored, and recognized as binding by the company". The restoration or reinstatement of the relation be-

tween the parties here did not create a new contract of insurance nor a new period from which the incontestability clause would begin to run.

The actual transaction between the parties in respect to the 1904 premium and the language of the 1904 receipt indicate a waiver of the forfeiture rather than a new contract. The language of the policy that for non-payment of a premium when due "this policy shall be void until duly reinstated" shows that the contracting parties always contemplated that if there should be a failure to promptly pay a premium when due, yet if payment should later be made the forfeiture might be waived and the policy should then continue in force.

The record is free from error and the judgment must be affirmed.

*Affirmed.*