# James P. Monahan, Administrator, Appellee, v. Metropolitan Life Insurance Company, Appellant.

## Gen. No. 21,808.

1. Insurance, § 659*—*what is required to prove breach of warranty in denying existence of prior insurance.* Proof of a breach of warranty in denying in an application for insurance the existence of prior insurance is not established merely by proving the existence of another policy, without further proof that the same was binding insurance when the application was made.

2. Insurance, § 610*—*when burden of proof is on defendant to establish affirmative defense.* The defense that the insured had a life policy in another insurance company at the time the application was made, although he stated therein that he had a policy only in a third company, is an affirmative defense and the burden of proof is on the insurer to establish it.

3. Insurance, § 610*—*when insurer must prove poor health of insured at time of issuance of outstanding policy.* Where an insurer claims the right to avoid a life insurance policy by showing that there was a policy outstanding at the time of the application which was not mentioned therein, and such outstanding policy provides that it shall not be operative until the payment for and delivery of the policy during the lifetime of the deceased and good health of the insured, it is necessary for defendant to prove that insured was not in good health when the outstanding policy was issued.

4. Insurance, § 603*—*when burden of proving execution of application is on defendant.* In an action on a life insurance policy, where there is an affidavit denying the signature of the insured to the part of the application containing the warranties, the burden of proving the execution of the instrument is on the defendant.

5. Trial, § 79*—*what evidence improper on surrebuttal.* It is improper to supplement evidence in chief by way of surrebuttal.

6. Insurance, § 659*—*when evidence sufficient to show that deceased did not sign portion of application relating to warranties.* In an action on a life insurance policy, where it appeared that an affidavit denying the signature of the insured to that part of the application containing the warranties was filed and the agent who wrote the insurance and saw the insured sign other portions of the application based his testimony solely on the resemblance of the signatures, and the defendant's medical examiner, who filled out the blanks containing the warranties was not called for the alleged

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

reason that he had examined thousands of applicants and could not recall insured, evidence *held* sufficient to show that deceased did not sign the portion of the application relating to warranties.

7. ESTOPPEL, § 44*—*when representative of insured is not estopped to deny genuineness of copy of application attached to policy.* The fact that an insured receives and retains a life insurance policy to which is attached what purports to be a copy of his application, and does not object that the same is not a true copy, does not estop the administrator of his estate from denying that the purported copy attached to the policy is a true copy, where there is no proof that defendant was deceived by the conduct or silence of the insured and changed his position in consequence of such silence.

8. INSURANCE, § 659*—*what degree of proof required of defendant claiming existence of valid outstanding policy.* In an action on a life insurance policy where the defense is an existing, valid, outstanding insurance policy at the time of the taking of the application not mentioned therein, the defendant is required to prove his defense with exactness.

9. INSURANCE, § 663*—*when evidence insufficient to show intentional false statement in application.* Evidence *held* insufficient to show that insured intentionally made a false statement in his application that he had only a certain amount of insurance on his life.

10. APPEAL AND ERROR, § 1401*—*when verdict not disturbed.* Where there is evidence tending to support a verdict of a jury it will not be disturbed on appeal.

Appeal from the Superior Court of Cook county; the Hon. WILLIAM F. COOPER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Affirmed. Opinion filed July 11, 1917.

HOYNE, O'CONNOR & IRWIN, for appellant.

KING, BROWER & HURLBUT, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment in the Superior Court by the Metropolitan Life Insurance Company, appellant. The jury rendered a verdict for the sum

of $3,000, interest and costs, in favor of appellee. There have been three trials in the Superior Court. The first resulted in a verdict in favor of appellee, which was set aside by the court and a new trial granted; the second trial resulted in an instructed verdict and judgment for appellant. On appeal to this court that judgment was reversed and the cause remanded (*Monahan v. Metropolitan Life Ins. Co.*, 180 Ill. App. 390), whereupon the cause was again tried, resulting in a verdict and judgment for appellee, from which this appeal is prosecuted.

The declaration upon the policy alleges that appellant insured the life of Patrick H. Fay, deceased, for the sum of $3,000, on a policy dated December 12, 1903.

Appellant filed twenty-two pleas. The first plea is the general issue; the second and third averred that the insured was not in good health at the date of the delivery of the policy; the remaining pleas aver breach of warranties alleged to have been made by Fay in his application, which was made a part of the contract of insurance, and averred as ground of forfeiture that the insured was not in good health when the policy was delivered; that his answers in the ·application which were warranted to be true were untrue in numerous instances.

Appellee filed a special replication, which avers that it is provided in the policy that "after two years this policy shall be noncontestable except for the nonpayment of premiums as stipulated, or for fraud"; that the policy is dated December 12, 1903, and that within two years appellant had notice of the death of the insured, and of the fact that appellee claimed that appellant was liable under the terms of said policy on proper proofs of death of said Fay on or about October 28, 1905; that although the period between the date appellant received such notice and the date of the expiration of two years from the date of the policy was ample time for appellant to make its election to rescind

the policy for supposed breach of warranty set forth in the pleas, yet appellant gave appellee no notice whatever that it intended to contest said policy and appellant is barred, therefore, from claiming that the insured made or committed a breach of any of the alleged warranties.

A second special replication avers that appellee was duly appointed administrator of the estate of the insured October 31, 1905; that appellant had ample time between the date of the notice of said claim and the date of the appointment of the administrator and the expiration of two years from the date of delivery of the policy to make a contest on the supposed breaches of warranty set forth in its special pleadings, yet appellant did not contest said policy within the two years after its date of delivery. To these two special replications a demurrer was filed, which was sustained by the court, and appellee elected to abide by the replications.

The chief defense is based on the alleged untruthfulness of the following statements made by the insured in his application:

"I have never had any of the following complaints or diseases: * * * disease of brain—* * * disease of urinary organs * * * insanity, * * * paralysis.

"I am now in sound health. I am not blind, deaf or dumb, nor have I any physical or mental defect or infirmity of any kind.

"The following is the name of the physician who last attended me, the date of the attendance, and the name of the complaint for which he attended me: Dr. Tiben, 1902, indigestion.

"I have not been under the care of any physician within two years unless as stated in previous line.

"I have no other insurance on my life except in the following named companies and for the following amounts; and by the word "company" I mean any

company, association, society or order granting life insurance: Royal league, $4,000.00.''

We shall consider here only the question as to the warranty against the existence of other insurance at the time of taking out the policy now sued upon. The other matters, involving health and medical service, were submitted to the jury and we find no reason for further considering them.

It is claimed by appellant that the statement as to other insurance in the application was false, and being a warranty makes the contract void. A policy for the sum of $3,000, dated September 30, 1903, taken out by the insured in another company, the Fidelity Mutual Life Insurance Company, and a receipt for the same by the insured dated October 30, 1903, were introduced in evidence by the appellant. Bennett, the local manager of the company, testified that on the latter date he delivered the policy to the insured and took the receipt mentioned, on which his own name appears as a witness. Evidence of payment of the first premium was also offered. It is claimed by appellant that this policy became operative and a binding contract before the signing of the application in the case at bar. This contention depends, in part, for its validity on the date of the application in the instant case. In the present case the records show that an application was made in the appellant company in August, 1903. What became of it does not appear. The witness Boyle testified that it was for the sum of $5,000 and that the insured, subsequently, on November 27, 1903, made another application to appellant company for a policy of $3,000. It is urged, however, by appellee that even though the application was subsequent to the issuance of the Fidelity policy, there is no competent evidence that the insured was in good health at the time the Fidelity policy was delivered; that the provision in the Fidelity policy that states it shall not be binding unless at the time of its delivery

the insured was in good health is a valid condition precedent and, until proof of fulfillment of the condition precedent to an insurance policy becoming effective, there is no valid insurance. It is doubtless true that proof of a breach of warranty in denying prior insurance is not established merely by proving the existence of another policy, without further proof that the same was binding insurance when the application was made.

The record shows that suit was brought (*Monahan v. Fidelity Mut. Life Ins. Co.*, 148 Ill. App. 171, 242 Ill. 488) and judgment paid on the Fidelity policy; that the court held the two-year incontestable clause was good and refused to consider all other matters and so did not adjudicate the question of "good health" of the insured.

Under the heading "General Precedent Conditions," the Fidelity policy, put in evidence by appellant, provides that the contract "shall not be operative or binding until the actual payment of the initial premium and delivery of the policy during the lifetime and good health of the insured." As stated above, payment of the premium and delivery of the policy were shown, but there is no evidence that the insured was in good health at that time. The law is that the existence of prior insurance should be proven by showing that such insurance was valid and binding. Inasmuch as the defendant sought to defend by proving that the insured had a policy in the Fidelity Company, and as that is an affirmative defense, the burden of introducing sufficient evidence of that fact was upon the defendant. No presumptions which might arise on a suit upon the Fidelity policy could be indulged in, in a suit upon the policy in this case. The defendant to establish its defense of other insurance must not only prove the policy but that its conditions as to good health were complied with. In the instant case, appellant claims the right to avoid its policy by showing the insured was

not in good health when it was issued, and *e converso,* when appellant seeks to show that there was a policy outstanding at the time the insured made his application for the policy in question in this case, it must show that the insured was in good health when it (the Fidelity policy) was issued.

It is contended by the appellee that that part of the application containing the warranties mentioned was not signed by the insured. An affidavit denying the signature was filed by appellee. This put upon appellant the burden of proving the execution of the instrument. The oral evidence is conflicting and leaves the authenticity of the signature in doubt. None of the witnesses who testified on this matter saw the insured sign the name attached. Boyle, the agent who solicited this insurance, says he saw him (deceased) sign the Part "B" of the application, but not Part "C" that contains the warranties. His testimony as to the latter signature carries little weight as it is based solely upon its alleged resemblance to the admittedly genuine signature. Appellee testified: "It is not P. H. Fay's signature. It is not even a good copy of it." But his testimony on Fay's handwriting given at the two preceding trials was so uncertain and unreliable that it cannot be considered of much weight. Appellant called a handwriting expert to testify on this question after appellee had put in his rebuttal, and on objection the court correctly ruled that it was improper to supplement evidence in chief by way of surrebuttal. The only person who could have testified positively to the signature in question was Dr. Sprague, appellant's medical examiner who filled out the blanks containing the warranties. In answer to the question, why did he not testify? appellant's counsel say: "Simply because Dr. Sprague has examined thousands of applications and it was impossible for him to recall Fay." As it was incumbent on appellant to prove the signature by

a preponderance, we are inclined to believe, in view of the evidence that was offered and which was submitted, that it cannot be said that a verdict that failed sufficiently to establish the genuineness of the signature would be clearly against the weight of the evidence. But it is urged by appellant that where a copy of the application is incorporated in the policy and as a part of the policy and remains in the possession of the insured, it is his duty to examine the policy and, if he retains it without complaint, his beneficiaries will be estopped from questioning it. As a general proposition, that is undoubtedly a correct statement of the rule laid down by our courts. But in the present case a question is raised whether the application put in evidence by appellant was signed by the insured.

The fact that the insured received and retained the policy of insurance to which is attached that which purports to be a copy of his application, and the absence of any evidence that insured objected that the same was not a true copy, did not estop the insured, and does not estop appellee, from denying that the purported copy attached to the policy is a true copy. There is no proof that appellant was deceived by the conduct or silence of the insured and changed his position in consequence of such silence. *Holcomb v. Boynton,* 151 Ill. 294; *Mullaney v. Duffy,* 145 Ill. 559.

Even if the insured withheld the fact that he had $3,000 other insurance on his life, it is difficult to see how it worked any harm to appellant; yet some authorities seem to hold such concealment a breach of warranty sufficient to avoid a policy.

Not only absolute truthfulness is required, but the statements and answers of the insured must be strictly correct under the rulings in a majority of the decisions on this subject. And it naturally follows, reciprocally, that a corresponding exactness of proof, when denying liability, is required on the part of the insurer. In the present case there would seem to be no motive on

the part of the insured to misstate the amount of insurance he held. A man situated as the insured was, carrying altogether $10,000 insurance on his life, would hardly be considered overinsured by the officials of any insurance company; and from the evidence, we are forced to the conclusion that it is highly improbable that deceased made such a false statement intentionally. The jury were instructed pointedly on this question as follows:

"If the jury believe from the evidence that at the time of the making of the application for the policy sued on, the insured, Patrick H. Fay, had insurance on his life in any company, association, society or order granting life insurance, except the Royal League, the jury will find for the defendant.

"If the jury find from the evidence that at the time of the making of the application for the policy sued on, the insured, Patrick H. Fay, had insurance on his life in The Fidelity Mutual Life Insurance Company of Philadelphia, Pennsylvania, the jury will find for the defendant."

The jury had submitted to them evidence as to the signature to the application, and as to the health of the insured, and they brought in a verdict against the appellant. Whether they concluded that the insured was not bound by the warranties in the application, on the ground that he did not sign it, or that he was not in good health when the Fidelity policy was issued, we do not know. All those matters were proper for the jury to consider, and as long as there was evidence tending each way we have no authority to criticise their verdict.

We have considered all the contentions of the appellee, and concluded that the judgment should be affirmed.

*Affirmed.*