SUSAN E. HERTEL, Plaintiff-Appellant, v. KEVIN B. SULLIVAN *et al.*, Defendants-Appellees.

Fourth District    No. 4—93—0646

Argued March 8, 1994.—Opinion filed April 7, 1994.

David E. Leefers (argued), of Jacksonville, and Matthew C. Mays, of Virginia, for appellant.

John L. Swartz and Carol Fines (argued), both of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellee Kevin B. Sullivan.

Kevin T. Martin (argued) and Aaron T. Shepley, both of Swanson, Martin & Bell, of Chicago, for other appellees.

JUSTICE COOK delivered the opinion of the court:

Defendants moved to dismiss this complaint because it was not filed within the two-year personal injury statute of limitations. (735 ILCS 5/13—202 (West 1992).) The trial court granted the motions and dismissed the complaint. Plaintiff appeals. We affirm.

Plaintiff Susan E. Hertel alleged in her proposed first-amended complaint that defendant Kevin B. Sullivan was a Catholic priest employed by defendant, the Roman Catholic Diocese of Springfield, and that he was pastor of Our Lady of Lourdes Church in Decatur. Plaintiff, who attended Our Lady of Lourdes, began counseling with Sullivan in 1982 for a family problem. Plaintiff and Sullivan allegedly began to engage in sexual conduct in January 1983, then sexual intercourse in September 1983. In August 1985 plaintiff told Sullivan she thought she was pregnant, and at his request arranged for a dilation and curettage. Sullivan began to ignore plaintiff at church and treat her differently from other parishioners, and as a result plaintiff began to suffer from severe depression. In May 1986 plaintiff reported all this to the bishop, who allegedly refused to intervene.

The complaint continued that on July 25, 1986, following an extremely demeaning telephone conversation with Sullivan, plaintiff collapsed at her apartment and was not discovered until several days later. Plaintiff's circulation was affected, resulting in the eventual

amputation of her left leg and part of her right foot (the final operation taking place in 1991). Plaintiff and Sullivan engaged in sexual relations until May 1988, but from 1983 to 1992 Sullivan treated plaintiff differently than he treated other parishioners, refusing to see her, refusing to counsel her, and hanging up on her or refusing her calls. Sullivan refused to administer the sacraments of the church to plaintiff and refused to allow her to participate in church functions. According to the complaint, Sullivan denied any relationship with plaintiff and claimed she was "crazy." When plaintiff told Sullivan she was contemplating suicide he allegedly told her that was not his problem, that he could not keep her from committing suicide, and "it's your problem, do what you want to do."

Plaintiff alleged she was emotionally and financially dependent on Sullivan, who controlled her every thought and action. Plaintiff alleged she did not realize the actions of Sullivan and the diocese were wrongful until July 1991, when she began therapy with her present psychologist (Daniel D. Hocking), and it was not until 1992 that she was emotionally capable of understanding her victimization and taking meaningful action for her own protection. Plaintiff's complaint alleged Sullivan was guilty of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. Plaintiff's injuries were said to include emotional distress and the amputation and related consequences. The diocese was alleged to be vicariously liable for Sullivan's conduct, and itself negligent in failing to protect plaintiff from Sullivan.

Additional facts were disclosed in plaintiff's deposition. Plaintiff was 29 years old in 1983, when the relationship with Sullivan allegedly began. Sullivan suggested that plaintiff receive professional psychological help, first making that suggestion in 1983. At that time, Sullivan made an appointment for plaintiff with a psychologist but told plaintiff not to talk to the psychologist about their relationship. Plaintiff's best friend is Joanne Pittz, whose husband is a former priest. Plaintiff discussed the relationship between herself and Sullivan with the Pittzes on many occasions beginning in February 1985. Plaintiff was hospitalized for depression in March 1985. At that time she told various persons, including her psychologist and several psychiatrists, about the alleged relationship. At that time plaintiff believed her depression was connected with the relationship. When she collapsed July 27, 1986, plaintiff had taken an overdose of prescribed medication. Again at that time she believed that Sullivan was responsible for her depression and her continuing dependency upon him. Sullivan did nothing to encourage a relationship after 1988. In a subsequent affidavit plaintiff stated her deposition answers

were based on what she knows now, since her therapy with Mr. Hocking, and not what she knew prior to that time. "Simply put, at the time of the events, I neither considered the conduct wrongful nor did I believe that anything the defendants did or did not do was the cause of my emotional distress and physical ailments."

■■ In most cases the question when an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused is one of fact. Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874; *McCormick v. Uppuluri* (1993), 250 Ill. App. 3d 386, 390, 621 N.E.2d 57, 60; *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 896, 588 N.E.2d 1193, 1202.) The purpose of a section 2—619 motion to dismiss is to dispose of a case on the basis of issues of law or easily proved issues of fact. Section 2—619 of the Code of Civil Procedure (Code) specifically lists the statute of limitations as a grounds for dismissal. The grounds for dismissal may be established by affidavits or depositions. (*Wood v. Village of Grayslake* (1992), 229 Ill. App. 3d 343, 348, 593 N.E.2d 132, 136.) However, the court may not decide a disputed question of fact if a jury demand is filed, as it was here. 735 ILCS 5/2—619 (West 1992).

■■ Sexual intercourse between consenting adults is generally not tortious conduct. (See 740 ILCS 15/1 (West 1992) (public policy to leave seduction actions to the criminal law).) Nor has negligent infliction of emotional distress generally been considered actionable. (See *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767.) However, a complaint was recently held to state a cause of action when it alleged that plaintiff suffered emotional distress. That complaint alleged that plaintiff went to a psychologist for counseling and the psychologist negligently violated standards of professional due care by having sexual relations with plaintiff during the course of her treatment and by failing to properly deal with the psychotherapeutic phenomenon of "transference." (*Corgan v. Muehling* (1991), 143 Ill. 2d 296, 307, 574 N.E.2d 602, 606-07.) We reject plaintiff's suggestion that the duties of a priest to his parishioner or of a minister to his congregation should be equated with the duties of a psychologist to his patient. A priest or minister is not required to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified psychologist.

Plaintiff goes on to analogize this case to *Cunningham v. Huffman* (1993), 154 Ill. 2d 398, 609 N.E.2d 321, where the supreme court held the four-year medical malpractice statute of repose (Ill. Rev.

Stat. 1989, ch. 110, par. 13—212) was tolled during the period of an ongoing course of continuous negligent medical treatment. The court held the statute of repose was tolled even though the statute's purpose was to curtail the "long tail" exposure to medical malpractice claims brought about by the advent of the discovery rule, and statutes of repose generally operate despite a potential plaintiff's lack of knowledge. (*Cunningham*, 154 Ill. 2d at 406, 609 N.E.2d at 325.) Otherwise patients who, after treatment for many years, "discovered that they were gravely injured" by that treatment could only seek recovery for the damage caused in the last four years. (*Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325.) Previous decisions of this court had held that the continuing course of treatment need not be negligent. *Daly v. Carmean* (1991), 210 Ill. App. 3d 19, 29, 568 N.E.2d 955, 961 (statute of limitations and statute of repose); *Neaterour v. Holt* (1989), 188 Ill. App. 3d 741, 747, 544 N.E.2d 846, 851 (statute of repose).

■ The continuing course of (negligent) treatment rule is a device to extend a statute of limitations or toll the running of a statute of repose. One reason for employing such a device in medical malpractice cases is that a patient is often forced to rely upon what he is told by the physician or surgeon. The Restatement suggests the discovery rule is a more direct method of addressing the problem (Restatement (Second) of Torts § 899, Comment *e*, at 444 (1979)), but the discovery rule is not available with statutes of repose, which in fact were enacted to avoid the discovery rule. We see no reason to expand the *Cunningham* rule to cases involving priests or ministers. In our view such cases, which involve the two-year statute of limitations and not the statute of repose considered in *Cunningham*, are adequately dealt with by considering the application of the discovery rule. A church member may choose to rely upon what he is told by a priest or minister, but is not forced to rely upon such information.

■ More broadly, plaintiff cites *Hyon Waste Management Services, Inc. v. City of Chicago* (1991), 214 Ill. App. 3d 757, 763, 574 N.E.2d 129, 132, and argues that "when a tort consists of a continuing or repeated injury *** the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease." In *Hyon*, however, the court found there was no such continuing injury. Instead there was a single alleged unlawful act followed by continued ill effects. In *Hyon* the city was alleged to have sealed an incinerator and thereby shut down a private business, without prior notice or hearing. (*Cf.* Restatement (Second) of Torts § 161, Comment *b*, at 289 (1965) (failure to remove from land a thing tortiously placed there constitutes a continuing trespass).) Plaintiff has not cited any Illinois

authority which squarely holds the continuing tort rule should apply beyond nuisance or trespass cases, and we decline to apply such a rule as a matter of first impression in this case. (*Cf. Gass v. Metro-East Sanitary District* (1989), 186 Ill. App. 3d 1077, 542 N.E.2d 1229 (recurrent flooding of plaintiff's farmlands).) Again, the proper inquiry here is whether the discovery rule should be applicable.

Even without the continuing tort rule, plaintiff is free to sue for tortious conduct occurring within the two years prior to the filing of her complaint. The trial court held, however, that none of the conduct which was alleged to have occurred subsequent to 1988 could be considered tortious, and accordingly dismissed that portion of the complaint. We agree with the trial court.

■ The "discovery rule" was first announced in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, a case involving a surveyor's error, and has been applied in a variety of situations since, including products liability tort cases and medical malpractice cases. (*Witherell*, 85 Ill. 2d at 154-55, 421 N.E.2d at 873-74.) By virtue of the discovery rule, the statute of limitations (for example, in a medical malpractice case):

> "starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action." *Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874.

The discovery rule does not apply to every case, only to those cases where application is justified by balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff, who neither knows nor should have known of the existence of his right to sue. *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 167, 421 N.E.2d 864, 867 (asbestos products liability action); but see *Superior Bank FSB v. Golding* (1992), 152 Ill. 2d 480, 488-89, 605 N.E.2d 514, 518 (discovery rule applied to five-year statute for civil actions not otherwise provided for, without any discussion of balancing rule).

A special limitations period applies in cases of childhood sexual abuse, both in repressed memory cases and in cases where plaintiff was unaware the sexual assaults had caused other physical and psychological problems. (735 ILCS 5/13—202.2 (West 1992).) Section 13—202.2 of the Code provides a two-year statute of limitations, with a discovery rule. The limitations period does not begin to run in any event until the child reaches 18. (735 ILCS 15/13—211 (West 1992).) Section 13—202.2 of the Code originally provided a statute of repose, which would run 12 years after the person abused attained the age of

18 years. (735 ILCS 5/13—202.2 (West 1992).) The statute of repose was eliminated effective January 1, 1994, by Public Act 88—127. (Pub. Act 88—127, eff. January 1, 1994 (1993 Ill. Legis. Serv. 2056-57 (West)).) Even before the enactment of section 13—202.2 the discovery rule applied to cases of childhood sexual abuse. *Franke v. Geyer* (1991), 209 Ill. App. 3d 1009, 1012-13, 568 N.E.2d 931, 933 (statute ran although plaintiff suppressed memories until psychotherapy); *Phillips v. Johnson* (1992), 231 Ill. App. 3d 890, 892, 599 N.E.2d 4, 6 (allegations that memories were suppressed until psychotherapy sufficient to withstand motion to dismiss); *Johnson v. Johnson* (N.D. Ill. 1988), 701 F. Supp. 1363 (issue of fact whether plaintiff in course of psychotherapy first remembered sexual abuse and discovered causal connection with injuries).

■ The present case, of course, is not one of childhood sexual abuse. We question whether the discovery rule should be applied to a case involving allegations of sexual abuse between consenting adults. As previously mentioned, the legislature has indicated that actions for seduction or breach of promise are disfavored, as a matter of public policy. (See 740 ILCS 15/1 (West 1992) (public policy to leave seduction actions to the criminal law).) This would appear to be an appropriate case to apply the general rule that a limitations period begins to run when facts first exist which authorize a party to maintain an action against another even though the extent of damages is not then ascertainable. *Hyon*, 214 Ill. App. 3d at 762, 574 N.E.2d at 132.

Even assuming the discovery rule would apply to the causes of action pleaded here, we conclude the statute has run. The term "wrongfully caused" does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action. Rather, the term refers to the point in time when the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. (*McCormick*, 250 Ill. App. 3d at 390, 621 N.E.2d at 60 (statute commenced when plaintiff filed his previous lawsuit, not date he obtained expert's opinion), citing *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980; *Betts*, 225 Ill. App. 3d at 896, 588 N.E.2d at 1202; *cf. Pruitt v. Schultz* (1992), 235 Ill. App. 3d 934, 944, 601 N.E.2d 1372, 1380 (question there better left for jury); *cf. LaManna v. G.D. Searle & Co.* (1990), 204 Ill. App. 3d 211, 218, 561 N.E.2d 1170, 1175 ("suspicion is not the same as reasonably knowing").) Plaintiff alleges she began to suffer from severe depression, due to the manner in which Sullivan was treating her, in 1985. She complained to the bishop about Sullivan's conduct

approximately May 8, 1986, and the injury resulting in amputation occurred approximately July 25, 1986. Plaintiff alleges that sexual relations between herself and Sullivan ceased after May 8, 1988.

Plaintiff clearly knew or should have known enough to put her on reasonable inquiry, at the latest by May 8, 1988, more than two years before this suit was filed. Plaintiff asserts she did not consider defendants' conduct wrongful nor did she believe that anything defendants did was the cause of her injuries until she consulted Hocking in 1991. Plaintiff may be faulted, however, for not consulting with Hocking until 1991. (See *Betts*, 225 Ill. App. 3d at 897, 588 N.E.2d at 1203 (plaintiff alerted but did not seek further tests by a specialist).) Plaintiff asserts the mental health specialists she consulted before Hocking did not believe her, and confused her, but that is not significant. " 'If [plaintiff] fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant ***.' " (*Witherell*, 85 Ill. 2d at 157, 421 N.E.2d at 875, quoting *United States v. Kubrick* (1979), 444 U.S. 111, 124, 62 L. Ed. 2d 259, 270, 100 S. Ct. 352, 360.) Plaintiff does not allege Sullivan interfered with her psychological counseling after March 1985, when she told her counselors about the relationship.

■ Finally, sections 13—211 and 13—212(c) of the Code provide that the statute of limitations does not run against a person "under *** legal disability." (735 ILCS 5/13—211, 13—212(c) (West 1992).) Those sections were designed to ensure that statutes of limitation were generally tolled during a plaintiff's infancy, mental incompetency, or imprisonment. In order to take advantage of those sections, plaintiff's complaint must sufficiently allege facts to show the existence of "legal disability." (*Passmore v. Walther Memorial Hospital* (1987), 152 Ill. App. 3d 554, 556, 504 N.E.2d 778, 779-80.) Plaintiff's complaint does not do so in this case. For all that appears in this complaint, plaintiff was as capable of filing this action in 1986 or 1988 as she was in 1992.

The trial court properly determined that this cause of action was barred by the statute of limitations.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.