884 P.2d 507

**Susan MARTINEZ–SANDOVAL, Plaintiff–Appellant,**

v.

**Father Robert J. KIRSCH, Roman Catholic Church of the Archdiocese of Santa Fe, Inc., a New Mexico corporation, and St. Thomas Apostle Church in Abiquiu, New Mexico, Defendants–Appellees.**

**No. 14771.**

Court of Appeals of New Mexico.

Aug. 24, 1994.

Certiorari Denied Nov. 3, 1994.

Steven L. Tucker, Steven L. Tucker, P.C., Santa Fe, Bruce E. Pasternack, Neil R. Blake, Bruce E. Pasternack, P.C., Albuquerque, for plaintiff-appellant.

Karen C. Kennedy, Simmons, Cuddy & Friedman, Arthur O. Beach, Nikki J. Mann, Keleher & McLeod, P.A., Albuquerque, for defendants-appellees Roman Catholic Church of the Archdiocese of Santa Fe, Inc., and St. Thomas Apostle Church in Abiquiu.

Nancy Hollander, J. Michele Guttmann, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, Albuquerque, for defendant-appellee Father Robert J. Kirsch.

## OPINION

HARTZ, Judge.

Susan Martinez–Sandoval (Plaintiff) appeals from the dismissal of her complaint against her former parish priest, Father Robert J. Kirsch (Kirsch), the Roman Catholic Church of the Archdiocese of Santa Fe

(the Archdiocese), and St. Thomas Apostle Church in Abiquiu (the Abiquiu Church). The district court dismissed the complaint on the ground that she did not file the complaint within the time required by the statute of limitations. We affirm.

## I. INTRODUCTION

Plaintiff, who was born on January 1, 1958, predicates her complaint on alleged sexual abuse and sexual exploitation by Kirsch from 1973 to 1977. The core counts of the complaint allege battery, negligent and intentional infliction of emotional distress, and clerical malpractice against Kirsch, with the Archdiocese and the Abiquiu Church allegedly being liable as his employers. In addition, Plaintiff alleges that the Archdiocese and the Abiquiu Church knew or should have known of prior misconduct by Kirsch and are therefore liable to Plaintiff for negligent failure to warn and negligent hiring, placement, and supervision. The complaint further alleges that the Archdiocese committed fraud by holding Kirsch out to the public as a trustworthy parish priest; that Kirsch and the Archdiocese had altered, hidden, or destroyed evidence corroborating Plaintiff's claims or would do so in the future; that the Archdiocese and Kirsch fraudulently concealed Kirsch's misconduct from her and misrepresented that Kirsch's conduct was not wrong and did not damage her; and that all Defendants are liable for punitive damages.

Plaintiff filed her complaint on August 28, 1991. The limitations period for actions for personal injury is three years. NMSA 1978, § 37–1–8 (Repl.Pamp.1990). *See* NMSA 1978, § 37–1–10 (Repl.Pamp.1990) (extending limitations period so that minors shall have one year after reaching majority to commence action). Hence, Plaintiff's complaint is time-barred unless her cause of action accrued after August 28, 1988 (the "limitations cutoff date") or the limitations period was tolled until then. Plaintiff contends that her complaint was timely because of (1) the discovery rule and (2) fraudulent concealment by the Defendants. We first address Plaintiff's discovery-rule argument.

## II. DISCOVERY RULE

### A. *Background*

Plaintiff asserts that her claim was filed within the limitations period because her cause of action did not accrue at the time of Kirsch's alleged misconduct from 1973 to 1977. Rather, she contends, her cause of action accrued when she discovered her claim while undergoing psychotherapy in 1991, well after the limitations cutoff date. She relies on a recent Supreme Court holding that "the cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Roberts v. Southwest Community Health Servs.*, 114 N.M. 248, 257, 837 P.2d 442, 451 (1992) (medical malpractice claim).[1]

Plaintiff does not contend that she repressed her memory of the events forming the basis of her claim. Also, she admits that as early as 1974 she knew that she was suffering from severe psychological problems. What she bases her invocation of the discovery rule on is her failure to ascertain the causal relationship between Kirsch's alleged misconduct and her severe psychological injury. She claims that not until her 1991 psychotherapy did she make that connection.

The district court conducted an evidentiary hearing to determine whether there was a factual basis for application of the discovery rule. The parties presented testimony both by deposition and through live witnesses. The chief matters of contention related to Plaintiff's understanding of the nature of Kirsch's conduct and the causal relationship between that conduct and her severe psychological problems. Defendants did not challenge Plaintiff's allegations of misconduct by Kirsch, and there was little dispute about the pertinent events. The evidence was as follows:

Plaintiff was raised in Abiquiu by a devoutly Catholic family. She first met Kirsch when he became the parish priest in 1970. A year later she began working in Kirsch's office. Kirsch initiated sexual contact with Plaintiff in the fall of 1973, when she was 15.

---

1. Plaintiff does not rely on a 1993 statute that specifically addresses the limitations period for claims of childhood sexual abuse, NMSA 1978, § 37–1–30 (Cum.Supp.1994).

The episode included intercourse. She described her first sexual contact with Kirsch as uncomfortable and moderately painful. Her second sexual encounter was awkward, uncomfortable, and embarrassing. She had sex with Kirsch almost weekly thereafter. Sometime in the next few months Kirsch told Plaintiff that he had an infection. She saw her family physician and was treated for a venereal disease.

Kirsch and Plaintiff continued to have sex on a weekly basis until the summer of 1974, when Plaintiff moved to Albuquerque. After the move Plaintiff was depressed and suicidal. Although Plaintiff continued to see Kirsch after her move to Albuquerque, the frequency of sexual contact dropped to once a month. She testified that during that period she found her relationship with Kirsch to be invasive, overwhelming, and suffocating.

In October 1974 a male friend of Plaintiff who suspected that she was involved with Kirsch asked her to speak to Father Arkad Biczak about her relationship with Kirsch. She met with Biczak, who said that he would discuss the situation with the Archbishop or other people in the Chancery office and would get back to her if there was a problem. At a church function about a month later Biczak told her not to worry, that there was no problem and he had taken care of everything.

Plaintiff moved back to Abiquiu in 1976 and resumed sexual contact with Kirsch at the frequency of about once a week. In July 1976 Kirsch took Plaintiff to a concert in Las Vegas, Nevada. They shared a hotel room. Plaintiff said that she had sex with Kirsch only because he had paid all the expenses and that the episode made her feel like "a piece of meat being paid for." Plaintiff returned to Albuquerque in August 1976 and became pregnant shortly thereafter. She had an abortion in the fall. She never told Kirsch about the pregnancy or abortion. Although she had also been having sexual relations with another man, she thought the father was probably Kirsch.

By that time Plaintiff had stopped attending mass because of what she was hearing about priests, including what Kirsch had told her about another priest who had sexual relationships with two boys. When Plaintiff

was married in 1983, the marriage was not in the Catholic Church.

Plaintiff first saw a psychiatrist in 1976. To relieve her depression, the doctor placed her on medication. She never discussed with the doctor her relationship with Kirsch.

Although Plaintiff testified that on many occasions she protested to Kirsch about their sexual relationship, the relationship continued until December 1978, when she fell in love with the man she later married. Kirsch became furious when she told him that they could no longer have a sexual relationship. In several emotional conversations she asked him to continue a nonsexual relationship, but he responded that there would be no friendship without sex. She testified that the termination of the relationship was "hideously painful" for her.

Also in 1978 Plaintiff consulted with a psychologist for approximately six months concerning her disabling depression and was treated with medication. In 1979 she visited her psychiatrist again a few times. Plaintiff was prescribed medication for her anxiety in 1989 but did not seek any further therapy until 1991.

In June 1991 Plaintiff began seeing Dr. Edward Snyder, an Albuquerque psychologist, to whom she was referred by her family physician. During the course of the consultations she disclosed her relationship with Kirsch, and that relationship was identified as the source of her severe psychological problems.

The district court, relying on a recent Supreme Court footnote, *Carrillo v. Rostro*, 114 N.M. 607, 623 n. 16, 845 P.2d 130, 146 n. 16 (1992), decided that it had authority to resolve disputed questions of fact on the discovery-rule issue. After the hearing the court made findings of fact in rejecting Plaintiff's contentions. The court also ruled, however, that there was no genuine issue as to any material fact regarding application of the statute of limitations and therefore Defendants were entitled to judgment as a matter of law. *See* SCRA 1986, 1–056(C) (grounds for granting summary judgment).

We assume, without deciding, that fact finding with regard to application of the discovery rule is a matter for the jury, rather than the trial judge. *Compare Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563, 567 (1973) (fact finding regarding application of the discovery rule is a matter for the judge) *with Riley v. Presnell,* 409 Mass. 239, 565 N.E.2d 780, 787 (1991) (collecting cases to show that majority rule is that fact finding regarding discovery rule is for the jury). *Cf. Roberts,* 114 N.M. at 257, 837 P.2d at 451 ("We believe that whether plaintiff in the instant case knew or with reasonable diligence ·should have known of the injury and its cause is a question of fact that is specifically within the trial court's competence."). Under that assumption, the district court could grant summary judgment dismissing the complaint only if Plaintiff had failed to establish a genuine issue of material fact concerning the application of the discovery rule. *See* SCRA 1–056(C).

## B. *Discussion*

Statutes of limitations serve the important public purpose of requiring "the exercise of a right of action within a reasonable time so that the party against whom the action is brought will have a fair opportunity to defend." *Moncor Trust Co. v. Feil,* 105 N.M. 444, 446, 733 P.2d 1327, 1329 (Ct.App.), *cert. denied,* 105 N.M. 421, 733 P.2d 869 (1987). Although any extension of the limitations period is likely to prejudice a defendant's ability to defend a claim, the discovery rule balances against that prejudice the unfairness to a plaintiff whose claim is barred before it would reasonably be possible to know that a claim exists. *See Roberts,* 114 N.M. at 256, 837 P.2d at 450. There is widespread agreement that a discovery rule in some form should be recognized, *id.* at 255–56, 837 P.2d at 449–50; but the tension between the interests of plaintiff and defendant creates a variety of views regarding the precise contours of the rule. *See generally, e.g.,* Russell G. Donaldson, Annotation, *Running of Limitations Against Action for Civil Damages for Sexual Abuse of Child,* 9 A.L.R.5th 321 (1993); Gregory G. Sarno, Annotation, *Emotional or Psychological "Blocking" or Repression as Tolling Running of Statute of Limitations,* 11 A.L.R.5th 588 (1993); Annotation, *Posttraumatic Syndrome As Tolling Running of Statute of Limitations,* 12 A.L.R.5th 546 (1993).

Defendants suggest several obstacles to Plaintiff's reliance on the discovery rule. Before addressing the dispositive one, we discuss several others without adopting or rejecting the underlying legal theory. Our discussion serves the purpose of clarifying what we are *not* deciding in this opinion. It also places in context our analysis of the ground upon which our affirmance is based.

First, the Defendants contend that the discovery rule does not apply to claims of clerical sexual abuse when the victim does not claim a repressed memory of the alleged acts of abuse. *See Hildebrand v. Hildebrand,* 736 F.Supp. 1512, 1521 (S.D.Ind.1990); *Bassile v. Covenant House,* 152 Misc.2d 88, 575 N.Y.S.2d 233 (Sup.Ct.1991), *aff'd,* 191 A.D.2d 188, 594 N.Y.S.2d 192, *appeal denied,* 82 N.Y.2d 656, 604 N.Y.S.2d 47, 624 N.E.2d 177 (1993); *cf. Tyson v. Tyson,* 107 Wash.2d 72, 727 P.2d 226, 230 (1986) (en banc) (rejecting application of discovery rule when Plaintiff claims repressed memory of sexual abuse), *superseded by* Wash.Rev.Code Ann. § 4.16.340 (West Supp.1994); *Farris v. Compton,* 802 F.Supp. 487 (D.D.C.1992) (following *Tyson* ). We assume, without deciding, that the discovery rule does apply in such circumstances.

Second, Defendants contend that in determining whether Plaintiff acted with reasonable diligence in discovering the cause of her injury, the standard of reasonableness is that of a normal person who knows the facts of which Plaintiff was aware. *See E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 622 A.2d 1388, 1393 (1993); *A. McD. v. Rosen,* 423 Pa.Super. 304, 621 A.2d 128, 131 (1993) (plaintiff's mental incapacity will not be considered in assessing diligence); *cf. ABC v. Archdiocese of St. Paul & Minneapolis,* 513 N.W.2d 482, 486 (Minn.Ct.App. 1994) (rejecting subjective standard). If that were the test, Plaintiff would not be able to prevail because a normal person exercising reasonable diligence should have discovered the connection between the alleged miscon-

duct and Plaintiff's psychological difficulties. But we assume, again without deciding, that the proper test is as follows:

The reasonable person who serves as the standard in this evaluation ... is not a detached outside observer assessing the situation without being affected by it. Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint.... [W]e look at a "reasonable person *in the position of the Plaintiff*[.]" If such an initially reasonable person would, by reason of the experience forming the basis for the plaintiff's complaint, have his or her judgment altered in some way, such altered judgment then becomes the standard. The cause of action will not accrue until such an individual would have discovered the damage. In other words, if the defendant's conduct would, in an ordinary reasonable person, cause an injury which by its very nature prevents the discovery of its cause, the action cannot be said to have accrued. Accrual of the cause of action occurs when the ordinary reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience.

*Riley,* 565 N.E.2d at 785–86. Plaintiff presented expert testimony by a psychologist that most reasonable people who had been subjected to the misconduct alleged in this case would not have been able to appreciate the causal connection between the misconduct and the severe psychological injury.

Third, Defendants suggest that the discovery period ended when Plaintiff first consulted a mental health care provider, even if the care provider failed to elicit facts concerning Kirsch's conduct and inform Plaintiff of the causal connection between that misconduct and Plaintiff's psychological injury. *See Hertel v. Sullivan,* 261 Ill.App.3d 156, 198 Ill. Dec. 574, 579, 633 N.E.2d 36, 41 (1994) (consequences of caregiver's error should not be visited on defendants); *cf. Lovelace v. Keohane,* 831 P.2d 624, 630–32 (Okla.1992) (victim of alleged sexual abuse by priest knew she was mentally disturbed and had obligation to discover the actual cause); *E.W. v. D.C.H.,* 231 Mont. 481, 754 P.2d 817, 820

(1988) (victim of sexual abuse need not know of causal link between abuse and psychological problems; she had duty to inquire into cause), *superseded by* Mont.Code Ann. § 27–2–216 (1989). Plaintiff saw a psychiatrist in 1976 and a psychologist in 1978, although she told neither about her relationship with Kirsch. Again, however, we do not rest our affirmance on this ground. We assume that there is a factual issue concerning whether a person in Plaintiff's circumstances, acting with reasonable diligence, would have discovered before the limitations cutoff date the causal connection between Kirsch's alleged misconduct and Plaintiff's severe psychological problems.

The fourth obstacle posed by Defendants derives from Plaintiff's testimony that she experienced pain and discomfort during her sexual encounters with Kirsch, and found the relationship distasteful and overwhelming. Some courts have held that the knowledge of such distress and its cause, which knowledge is not contested by Plaintiff, suffices to start the limitations period running. *See Bowser v. Guttendorf,* 373 Pa.Super. 402, 541 A.2d 377, 380 (Ct.1988); *Doe v. Coffee County Bd. of Educ.,* 852 S.W.2d 899, 904 (Tenn.Ct.App. 1992), *appeal denied* (May 3, 1993). Others say that the sexual assault in itself constitutes sufficient harm. *See DeRose v. Carswell,* 196 Cal.App.3d 1011, 242 Cal.Rptr. 368, 371 (1987) (in sexual abuse case, assault causes serious harm as a matter of law), *review denied* (Mar. 17, 1988), *superseded by* Cal.Civ.Proc.Code § 340.1 (Deering 1990); *Doe v. R.D.,* 308 S.C. 139, 417 S.E.2d 541, 542 (1992); *Whatcott v. Whatcott,* 790 P.2d 578, 580 (Utah Ct.App.1990) (awareness of sexual abuse is enough, without knowing full extent of injury). Nevertheless, we assume that the cause of action does not accrue until the plaintiff knows or should reasonably have discovered that she has suffered appreciable harm from the defendant's misconduct, *see Marsha V. v. Gardner,* 231 Cal.App.3d 265, 281 Cal.Rptr. 473, 475–76, *review denied* (Aug. 22, 1991); *cf. Jaramillo v. Hood,* 93 N.M. 433, 434, 601 P.2d 66, 67 (1979) (action for legal malpractice accrues when "actual loss or damage results" and "matters complained of are ascertainable and discoverable"), and that the distress experienced by

Plaintiff during her involvement with Kirsch did not rise to that level.

■ Having assumed that Plaintiff has circumvented the above four obstacles, we now address the ground upon which we affirm the district court's dismissal of Plaintiff's claim. Plaintiff alleges in her complaint, and did not contest at the district court hearing, that during her relationship with Kirsch she acquired a sexually transmitted disease from Kirsch and obtained an abortion after she became pregnant from Kirsch. Plaintiff's acquisition of a venereal disease and her pregnancy leading to an abortion were sufficiently substantial injuries that once she knew that they were caused by Kirsch, the limitations period would no longer be delayed by the discovery rule. We refuse to hold that a venereal disease and a pregnancy terminating in an abortion are consequences too trivial to found a cause of action. Plaintiff does not dispute that during the time of her relationship with Kirsch it was her belief that her pregnancy and disease were caused by Kirsch.

■ Even if it was also necessary that Plaintiff knew or reasonably should have known that Kirsch's sexual involvement with her was wrongful, see *Evans v. Eckelman,* 216 Cal.App.3d 1609, 265 Cal.Rptr. 605, 611 (1990), a proposition which we question, see *Coslett v. Third St. Grocery,* 117 N.M. 727, 735, 876 P.2d 656, 664 (1994) (key consideration under discovery rule is knowledge of the facts, not knowledge of the legal basis for the cause of action); *Hertel,* 198 Ill.Dec. at 579, 633 N.E.2d at 41 (discovery occurs when "injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved"); *E.J.M.,* 622 A.2d at 1394 ("[T]he fact that a plaintiff is not aware that the defendant's conduct is wrongful, or legally actionable, is irrelevant."), such knowledge is not at issue here. Long before the limitations cutoff date Plaintiff had severed her relationship with the Catholic Church and Kirsch himself. Plaintiff stopped going to mass in 1975, when she was 17. In 1977 Plaintiff terminated her relationship with Kirsch. Plaintiff's expert witness testified that by the time Plaintiff was twenty-five (in 1984), she would expect Plaintiff to know that her past sexual relationship with Kirsch was wrong and socially unacceptable. In these circumstances the accrual of Plaintiff's cause of action cannot be delayed beyond the limitations cutoff date in 1988 on the ground that Plaintiff still may not have appreciated, in some sense, that Kirsch's conduct was wrongful. See *Lovelace,* 831 P.2d at 630; *Byrne v. Bercker,* 176 Wis.2d 1037, 501 N.W.2d 402, 404–06 (1993) (statute began to run even though victim had not yet shifted the blame to her incestuous father); *cf. O'Neal v. Division of Family Servs.,* 821 P.2d 1139, 1145 (Utah 1991) ("If we were to hold that a plaintiff who was aware of the facts constituting a cause of action could claim the benefit of the discovery rule if that plaintiff could show that some psychological problem prevented him or her from bringing suit against a defendant[,] . . . we would open the door to all manner of claims seeking to avoid the bar of statutes of limitations."). We note that courts which have adopted a "continuous treatment" or "continuous representation" rule—which tolls the limitations period for professional malpractice because of the continuing influence of a doctor or lawyer who had a fiduciary responsibility to the plaintiff—end the tolling when the treatment or representation ends. See, e.g., *Wall v. Lewis,* 393 N.W.2d 758, 762–63 (N.D.1986).

■ Thus, regardless of whether Plaintiff knew or should have known of the severe psychological damage caused by Kirsch's alleged misconduct, Plaintiff knew and should have known well before the limitations cutoff date that the alleged misconduct had caused her other substantial injury. The limitations period is not tolled simply because a plaintiff does not know the full extent of her injury; the statute begins to run once she knows or should know sufficient facts to constitute a cause of action. *Bolden v. Village of Corrales,* 111 N.M. 721, 722, 809 P.2d 635, 636 (Ct.App.), *cert. denied,* 111 N.M. 77, 801 P.2d 659 (1990); see *Coslett,* 117 N.M. at 728, 876 P.2d at 657; *Baily v. Lewis,* 763 F.Supp. 802, 810 (E.D.Pa.), *aff'd,* 950 F.2d 721 (3d Cir.), *aff'd,* 950 F.2d 722 (3d Cir.1991); *Marsha V.,* 281 Cal.Rptr. at 477; *E.W.,* 754 P.2d at 820–

21; *R.D.*, 417 S.E.2d at 542; *Coffee County Bd. of Educ.*, 852 S.W.2d at 904.

■ Perhaps it could be argued that the sexual misconduct causing Plaintiff's venereal disease and pregnancy can be isolated from the remainder of Kirsch's alleged misconduct, thereby leaving Plaintiff with a viable cause of action based on that remainder. But Plaintiff makes no such argument on appeal. Nor would such an argument be consistent with the theory of Plaintiff's complaint. Paragraph 12 of the complaint, which is incorporated in every count of the complaint, states:

> From 1973 and into 1977, from the time Plaintiff was fifteen (15) until she was eighteen (18), Kirsch continued [t]o sexually abuse and sexually exploit Plaintiff. On one occasion, he communicated a sexually transmitted disease to Plaintiff. On another occasion, she became pregnant and got an abortion.

Thus, Plaintiff treated Kirsch's alleged misconduct as a continuing tort, forming the predicate of one indivisible cause of action. Plaintiff's approach accords with the general rule that when a series of actions by a defendant cause one indivisible harm, Plaintiff has only one indivisible cause of action. *See Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927) ("[R]espondent suffered but one actionable wrong ..., whether his injury was due to one or the other of several distinct acts of alleged negligence or to a combination of some or all of them."); *Morris v. Fitzgerald*, 73 N.M. 56, 61–62, 385 P.2d 574, 578 (1963) (following *Phillips*); *Baily*, 763 F.Supp. at 810; *DeRose*, 242 Cal.Rptr. at 376 n. 6 ("The attempt to create two separate primary rights corresponding to physical and emotional harm ... contradicts the common recognition that a sexual assault injures both person and feelings, as well as the rule that a single tort gives rise only to one cause of action."); 54 C.J.S. *Limitations of Actions* § 177 (1987); 1A C.J.S. *Actions* § 196 (1985) (several acts of negligence resulting in one injury create one cause of action).

■ A second possibility is that Plaintiff's cause of action could be salvaged by a doctrine that has been applied in asbestos litigation. Some courts have held that a plaintiff may sue for damages caused by mesothelioma arising from exposure to asbestos, even though the plaintiff sues long after knowing that he or she suffered from asbestosis arising from the same exposure. This approach has been justified, however, on the ground that the plaintiff's mesothelioma was " 'unknown and inherently unknowable' " when the claim for causing asbestosis accrued. *See Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 117 (D.C.Cir.1982) (R. Ginsburg, J.) (quoting *Urie v. Thompson*, 337 U.S. 163, 169, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949)). In the present case Plaintiff may not have been able to discover on her own the cause of her psychological problems, but there is no contention that the cause was "inherently unknowable." We have little doubt that if Plaintiff had brought a claim based on the venereal disease and pregnancy, a competent attorney handling the case would soon have retained experts who would have uncovered the psychological harm and its cause.

Thus, we hold that the district court correctly ruled against Plaintiff's discovery-rule contentions.

## III. FRAUDULENT CONCEALMENT

■ We can quickly dispose of Plaintiff's contention that the statute of limitations was tolled by fraudulent concealment. She summarizes the factual basis for the contention as follows:

> In the instant case, there are numerous facts which could create issues in support of fraudulent concealment contentions. Primarily, there is the meeting Susan had with Fr. Biczak asking if there was anything wrong with the sexual contact in which Kirsch was engaging her, and reaching out to Fr. Biczak for some guidance on that issue. There is Fr. Biczak's statement to her that he would get back to her if there was any problem with what Kirsch was doing, and the fact that he subsequently did get back to her telling her there was nothing wrong. The Archdiocese and Kirsch also had knowledge of Kirsch's bizarre background, his treatment at Servants of the Paraclete for alcoholism,

and his violent attacks on an elderly parishioner in Abiquiu. This knowledge was not disclosed to Susan, but should have been disclosed both before and after Susan was sexually assaulted by Kirsch.

Our Supreme Court recently set forth what is necessary to toll the limitations period on the ground of fraudulent concealment:

In the case of fraudulent concealment, the facts that a party must show are: (1) the use of fraudulent means by the party who raises the bar of the statute; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of reasonable diligence could not have known that he might have a cause of action.

*Continental Potash v. Freeport–McMoran, Inc.*, 115 N.M. 690, 698, 858 P.2d 66, 74 (1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 383 (1994). Plaintiff has not satisfied the test.

First, we fail to see the relevance of the failure to tell Plaintiff of Kirsch's misconduct and problems prior to his relationship with Plaintiff. These matters may be relevant to Plaintiff's failure-to-warn claim, but they do not concern concealment of Kirsch's misconduct toward Plaintiff herself.

That leaves Father Biczak's exchange with Plaintiff as the sole basis for the fraudulent concealment claim. The exchange began when Plaintiff, at the urging of a friend, met with Biczak in October 1974 and told him of her sexual contact with Kirsch. Biczak said that he would discuss the matter with others in the church hierarchy and would get back to her if there was a problem. A month later Biczak told Plaintiff at a church function that there was no problem and he had taken care of everything.

Father Biczak thus concealed no facts from Plaintiff. " '[A] cause of action is not concealed from one who has knowledge of the facts that create it.' " *Riley,* 565 N.E.2d at 788 (quoting *Stetson v. French,* 321 Mass. 195, 72 N.E.2d 410, 412 (1947)). *See Baily,* 763 F.Supp. at 811 (general reassurance does not rise to level of specific representations

necessary to constitute fraudulent concealment); *E.J.M.,* 622 A.2d at 1395.

Moreover, Plaintiff does not claim that she relied indefinitely on any reassurance by Father Biczak that Kirsch's conduct was proper. In any event, such continuing reliance would have been unreasonable.

## IV. CONCLUSION

We affirm the district court's dismissal of Plaintiff's complaint on the ground that the limitations period had run prior to Plaintiff's filing of her complaint.

**IT IS SO ORDERED.**

APODACA and FLORES, JJ., concur.