2000-NMCA-012

999 P.2d 1026

**KEVIN J., Plaintiff–Appellee,**

v.

**Edward M. SAGER, M.D., and Heights Medical Center, Defendants–Appellants.**

Nos. 19,745, 19,746.

Court of Appeals of New Mexico.

Nov. 18, 1999.

Certiorari Denied, No. 26,142,
Feb. 10, 2000.

F. Michael Hart, Gabrielle M. Valdez, Wendy F. Jones, Eaton, Martinez & Hart, P.C., Albuquerque, for Appellee.

Charles A. Pharris, Alfred A. Park, Keleher & McLeod, P.A., Albuquerque, for Appellant Sager.

Gordon J. McCulloch, Bradley & McCulloch, P.A., Albuquerque, for Appellant Heights Medical Center.

## OPINION

WECHSLER, Judge.

{1} This interlocutory appeal presents the first opportunity for us to interpret NMSA 1978, § 37–1–30 (1995), the statute of limitations for claims arising from child sexual abuse. Defendants Edward M. Sager

M.D. (Dr. Sager) and Heights Medical Center (Heights) appeal from a trial court order denying their motions for summary judgment based upon the three-year statute of limitations set by Section 37–1–30. We affirm the trial court's denial of Defendants' motions.

*Facts*

{2} On February 5, 1997, Plaintiff Kevin J. (Plaintiff) filed a lawsuit alleging that, in August 1977, while associated with Heights, Dr. Sager sexually abused him during a physical examination. Plaintiff claims that, at age 16, he went to Dr. Sager for his medical examination, which was required before he could become eligible for participation in high school sports. According to Plaintiff, during what Dr. Sager described as a prostate exam, Dr. Sager masturbated Plaintiff to ejaculation in a manner amounting to sexual abuse. Plaintiff does not claim that he repressed any memory of the alleged abuse.

{3} In July or August 1991, Plaintiff began seeing Douglas J. Feil (Feil) of Southwest Counseling Associates, a counselor licensed by the State of Colorado. Feil initially diagnosed Plaintiff with low grade depression and general anxiety. In August 1992, Plaintiff first told Feil of the alleged abuse by Dr. Sager. Feil told Plaintiff that the alleged conduct by Dr. Sager amounted to abuse and that Plaintiff should write a letter to the American Medical Association about it. On approximately October 13, 1992, Feil noted, after meeting with Plaintiff, that Plaintiff was able to see some of the negative impact of the alleged abuse and was more able to call it "abuse." Feil further testified, however, that Plaintiff only used the word "abuse" because Feil had originally termed the alleged conduct "abuse." According to Feil, Plaintiff did not have "any level of psychological understanding or recognition of what had happened or the impact it had had on his life" at that time. On approximately February 23, 1993, Plaintiff discussed his feelings with Feil, stating that he had made the alleged abuse the "scapegoat" for certain of his feelings.

{4} On or about April 2, 1993, Plaintiff told Feil that he did not want to accept that the abuse was significant because, as Feil testified, Plaintiff blamed himself for the alleged incident. Feil further testified that his notes from that date indicated that Plaintiff "sees how he has let that abuse define him," and that he understood the effect of the alleged abuse at some level. However, Feil also testified that "it's a process that unfolds for people." On or about April 7, 1993, Plaintiff related to Feil that the abuse had become "part of his filter," meaning, according to Feil, that Plaintiff realized that the alleged abuse was an ingrained part of his personality. Feil further testified that Plaintiff viewed himself as "defective."

{5} In the fall of 1993, at Feil's urging, Plaintiff drafted a letter to the Colorado Medical Association in which he wrote, "Though I want to deny it, the incident affected me greatly, reinforcing doubts that I already had about my sexuality." Feil testified at deposition that the letter was a true statement of how Plaintiff felt on September 20, 1993. Feil further testified that Plaintiff had a cognitive understanding, on some level, of the effect that the alleged abuse had on his life at this time. Notwithstanding his other testimony, Feil testified that, in his opinion, Plaintiff did not "pull it all together" and understand the abuse had affected him on an emotional level until August 1994.

*Discussion*

{6} The sole issue on appeal is whether the trial court erred by denying Defendants' motions for summary judgment upon the rationale that genuine issues of material fact remained to be determined concerning the time Plaintiff knew or had reason to know that the abuse had caused him an injury pursuant to Section 37–1–30(A)(2). This question raises two subissues: (1) the effect of Section 37–1–30(A)(2)'s competent medical or psychological testimony requirement; and (2) the extent of knowledge required to start the statute of limitations running under Section 37–1–30(A)(2).

{7} Section 37–1–30(A) reads as follows:
A. An action for damages based on personal injury caused by' childhood sexual

abuse shall be commenced by a person before the latest of the following dates:

(1) the first instant of the person's twenty-fourth birthday; or

(2) three years from the date of the time that a person knew or had reason to know of the childhood sexual abuse and that the childhood sexual abuse resulted in an injury to the person, as established by competent medical or psychological testimony.

{8} Plaintiff filed suit on February 5, 1997. Therefore, Plaintiff's claim is timely under Section 37–1–30(A) if it accrued on or after February 5, 1994. Because of Plaintiff's age, Section 37–1–30(A)(1) is not applicable to our determination of whether Plaintiff's complaint was timely.

### Standard of Review

{9} Insofar as the questions for determination by this Court involve the interpretation of Section 37–1–30(A)(2), those are questions of law, which we will review de novo. See State v. Rael, 1999–NMCA–068, ¶ 5, 127 N.M. 347, 981 P.2d 280. We then determine whether the application of the law to the facts supports the trial court's denial of summary judgment. See LaMure v. Peters, 1996–NMCA–099, ¶ 13, 122 N.M. 367, 924 P.2d 1379 (holding that summary judgment is proper if "there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law"). Although the historical facts in this case are clear, as set forth in Plaintiff's and Feil's deposition testimony, the parties differ on the inferences that may be drawn from those facts. We view the evidence in a light most favorable to Plaintiff, as the non-moving party. See id.

### Date of Causal Connection Established by Competent Medical and Psychological Testimony

{10} Heights argues that the clause "as established by competent medical or psychological testimony" at the end of Section 37–1–30(A)(2) applies only to the immediately preceding phrase, "that the childhood sexual abuse resulted in an injury to the person." Therefore, Heights argues, expert psychological testimony is only necessary to determine that an injury resulted from sexual abuse and is not essential in determining when a potential plaintiff either knew or had reason to know of the alleged abuse or the resulting injury. In support of its argument, Heights cites the "last antecedent rule" as discussed by this Court in State ex rel. Department of Public Safety v. One 1990 Chevrolet Pickup, 115 N.M. 644, 647–48, 857 P.2d 44, 47–48 (Ct.App.1993).

{11} We do not agree with Heights' interpretation of Section 37–1–30(A)(2)'s expert testimony requirement. First, we note that in One 1990 Chevrolet Pickup, this Court rejected the strict application of the last antecedent rule that Heights urges. See id. at 647–48, 857 P.2d at 47–48. Furthermore, a comma separating the qualifying phrase from the antecedents is strong evidence the qualifying phrase applies to all antecedents, not solely the last antecedent. 2A Norman J. Singer, Sutherland Statutes & Statutory Construction § 47.33, at 270 (5th ed.1992). We find nothing in the structure of the statute that would indicate, as Heights argues, that the qualifier "as established by competent medical or psychological testimony" only applies to the causation of the injury as opposed to the date of ascertainment of both the abuse and that it caused the injury.

{12} Furthermore, we see no reason to support the proposition that the legislature only intended the qualifying phrase to qualify its immediate antecedent. In fact, the contrary appears to be true. Section 37–1–30 appears to have been written with modern psychological theory in mind. In cases of childhood sexual abuse, it frequently appears to be the case that the child is aware of the episode or episodes of abuse and is also aware of psychological dysfunction, but because of coping or defense mechanisms the child is not aware that the psychological dysfunction is caused by the abuse. See generally Dunlea v. Dappen, 83 Hawai'i 28, 924 P.2d 196, 201–04 (1996).

{13} We therefore conclude that the legislature intended to have the qualifying phrase "as established by competent medical or psychological testimony" apply to the preceding clause "know or had reason to know

of the childhood sexual abuse and that the childhood sexual abuse resulted in an injury to the person" in its entirety. Accordingly, reading the statute as a whole in its logical sense and applying the requirement for medical or psychological testimony to the entire section, we believe that the legislature intended the statute of limitations to begin running at the time a plaintiff knew or had reason to know of the connection between the alleged childhood sexual abuse and the injury, as established by competent medical or psychological testimony.

*Evidentiary Requirement of Section 37–1–30*

{14} Both Dr. Sager and Heights argue that Plaintiff knew of both the alleged abuse and the resulting injury at a time well outside of the three-year statute of limitations in this case. In support of their argument, they cite to instances in Plaintiff's deposition testimony which, Defendants argue, indicate this knowledge at a time earlier than February 5, 1994.

{15} As discussed above, the causal connection between the alleged abuse and the injury under Section 37–1–30(A)(2) is to be established by competent medical or psychological testimony. Therefore, under our interpretation of Section 37–1–30(A)(2), the testimony from both Plaintiff and Feil regarding Plaintiff's actions or statements is not in itself determinative of the point at which the statute of limitations began to run. Feil's psychological expert testimony interpreting Plaintiff's actions and statements is also necessary to determine when Plaintiff knew or had reason to know of the connection between the alleged abuse and the injuries he allegedly suffered. Applying this statutory evidentiary standard, we cannot ignore Feil's testimony that, even though Plaintiff had some cognitive understanding and realization of the abuse and its effect upon him prior to February 5, 1994, Plaintiff did not finally pull it all together and realize the impact that the abuse had on his life until after February 5, 1994. As we noted previously, Feil testified that "it's a process that unfolds for people." Since Section 37–1–30(A)(2) requires expert testimony, facts alone are insufficient to determine when an individual knew or had reason to know of the connection between the abuse and the injury.

*Applicability of Martinez–Sandoval v. Kirsch*

{16} In support of his argument that Plaintiff had sufficient knowledge of the causal connection between the alleged abuse and injury prior to February 5, 1994, Dr. Sager cites to this Court's decision in *Martinez–Sandoval v. Kirsch,* 118 N.M. 616, 884 P.2d 507 (Ct.App.1994), a case that did not involve the special statute of limitations for childhood sexual abuse. *See id.* at 618 n. 1, 884 P.2d at 509 n. 1. In *Martinez–Sandoval,* we held that, in the case of a plaintiff who suffered alleged damages from venereal disease and pregnancy caused by the defendant, the statute of limitations began to run at the time the plaintiff realized that these substantial injuries were caused by that defendant's alleged misconduct. *Id.* at 622, 884 P.2d at 513. Dr. Sager points out that in *Martinez–Sandoval,* we held that "[t]he limitations period is not tolled simply because a plaintiff does not know the full extent of her injury; the statute begins to run once she knows or should know sufficient facts to constitute a cause of action." *Id.* Although this is a correct recitation of the holding in that case, we believe that the factual context of that holding is different from the present case because *Martinez–Sandoval* addresses the general statute of limitations for torts resulting in physical injuries while in the present case we deal with a specialized statute that is particularly applicable to psychological injuries.

{17} In *Martinez–Sandoval,* we specifically stated that "regardless of whether [the plaintiff] knew or should have known of the severe psychological damage caused by [the defendant's] alleged misconduct, [the plaintiff] knew and should have known well before the limitations cutoff date that the alleged misconduct had caused her other substantial injury." *Id.* By other substantial injury, we were referring to the plaintiff's allegations that the defendant had transmitted a venereal disease to her and caused her to become pregnant. *See id.* Furthermore, we specifi-

cally noted that the plaintiff's cause of action was premised upon damages alleged to have been caused by plaintiff having caught a sexually transmitted disease from the defendant, and by defendant causing plaintiff to become pregnant. *See id.* at 623, 884 P.2d at 514. We held that in the situation of a substantial injury, such as the pregnancy and venereal disease alleged to have been caused by the defendant in that case, the plaintiff would be able to determine at that time that she had been injured and that the defendant had caused an injury. *See id.* We also noted that the plaintiff may have been able to isolate other causes of action in her original complaint, other than the venereal disease and the pregnancy, which may have survived. *See id.* We noted that she failed to do so. *See id.* Finally, we observed that if the plaintiff had consulted an attorney based upon the venereal disease and the pregnancy, any psychological problems that may have been part of the damages would have been discovered. *See id.*

{18} In this case on appeal, Plaintiff does not allege any physical injury that should have led him to discover any psychological injury such as that set forth by the plaintiff in *Martinez–Sandoval.* It appears that Plaintiff only bases a claim on the psychological damages that he claims Dr. Sager caused. We are not faced with the question of when Plaintiff knew or should have known of a physical condition that should have led him to discover his psychological condition, but rather when Plaintiff knew or should have known of the alleged psychological injury that is the basis for his claim and that the psychological injury was caused by Dr. Sager's alleged abuse. Moreover, importantly, both Defendants rely solely on Section 37–1–30. The holding of *Martinez–Sandoval,* therefore, does not apply to our analysis.

### Propriety of Summary Judgment

{19} Lastly, we address whether, based upon the law as set forth above and under the facts of this case, summary judgment was warranted. As we noted in *Blauwkamp v. University of New Mexico Hospital,* 114 N.M. 228, 231, 836 P.2d 1249, 1252 (Ct.App. 1992), "[s]ummary judgment is a drastic re-

medial tool which demands the exercise of caution in its application." Furthermore, "[w]hen the facts before the court are reasonably susceptible to different inferences, summary judgment is improper." *Id.* at 236, 836 P.2d at 1257.

■ {20} Feil's expert testimony regarding Plaintiff's condition is susceptible to different permissible inferences. Because of the very nature of the psychological testimony that Section 37–1–30(A)(2) requires, the fact finder could infer from Feil's testimony that the discovery of the connection between the alleged abuse and injury by the Plaintiff was a process, and under that process it did not become clear to Plaintiff, such that he knew or had reason to know, that his injuries were caused by the alleged abuse until after February 5, 1994. This inference would be supported by substantial evidence. *See Landavazo v. Sanchez,* 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990) ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion."); *see also Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986) ("The question [in reviewing a substantial evidence claim] is not whether substantial evidence would have supported the opposite result; it is whether such evidence supports the result reached."). Alternatively, based upon Feil's testimony, the fact finder could find that Plaintiff knew or had reason to know of the alleged abuse prior to February 5, 1994, which might also be supported by substantial evidence. Because there are differing permissible inferences that the fact finder could make based upon Feil's testimony, summary judgment was not proper in this case. The question of when Plaintiff knew or had reason to know of the alleged abuse and its impact is a question for the jury to decide. *See Blauwkamp,* 114 N.M. at 231, 836 P.2d at 1252 (stating that where factual disputes "are shown to exist," summary judgment is not proper).

■ {21} Dr. Sager argues that Plaintiff is essentially seeking an interpretation of Section 37–1–30(A)(2) that would toll the statute of limitations until Plaintiff understands the full impact of his injuries, thereby completely negating the purpose of the stat-

ute of limitations. We disagree. This opinion should not be construed as holding that a plaintiff must fully understand every aspect of his injury before the statute of limitations begins to run under Section 37–1–30(A)(2). There may be cases, depending upon the psychological testimony presented, in which the psychological testimony only supports the inference that the statute of limitations has run. We hold, however, that when medical or psychological testimony is subject to differing permissible inferences that affect the ultimate determination of whether the statute of limitations has run, summary judgment is not proper.

*Conclusion*

{22} Under Section 37–1–30(A)(2), the date that a plaintiff discovers that alleged sexual abuse resulted in an injury to the plaintiff, thus triggering the three-year statute of limitations, is to be established by competent medical or psychological testimony. Based on the facts of this case, we determine that summary judgment was not warranted and that it is a question for the finder of fact to determine at what time Plaintiff knew or had reason to know that the alleged abuse caused him injury. We affirm the trial court's order and remand to the trial court for trial on the statute of limitations question and, if the fact finder determines Plaintiff's claim was timely, on the merits.

{23}   **IT IS SO ORDERED.**

PICKARD, C.J., and APODACA, J., concur.