FIFTH DIVISION
June 30, 2010

No. 1-09-1273

| | | |
|---|---|---|
| MICHAEL H. JANOWIAK, Individually, | ) | |
| and as Trustee of the Michael H. Janowiak | ) | Appeal from the |
| Trust Under the Janowiak GST Trust, | ) | Circuit Court of |
| Dated October 1, 1995, | ) | Cook County, |
| | ) | |
| Plaintiff-Appellant, | ) | 08 L 585 |
| | ) | |
| v. | ) | The Honorable |
| | ) | Barbara A. McDonald, |
| ANGELO F. TIESI, | ) | Judge Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

MODIFIED OPINION UPON DENIAL OF REHEARING

PRESIDING JUSTICE TOOMIN delivered the modified opinion of the court:

In this appeal, we review the circuit court's dismissal of plaintiff's complaint alleging causes of action for breach of fiduciary duty and fraud. In the case *sub judice*, plaintiff alleged that defendant breached his fiduciary duty to plaintiff as trustee of an irrevocable family trust by failing to disclose material information concerning the true value of shares owned in the family business and in securing plaintiff's release of his fiduciary duties. The circuit court found that the release barred plaintiff's claims as defendant had effectively resigned as trustee prior to its execution and thus defendant did not owe plaintiff a fiduciary duty, nor did defendant commit any fraud. For the following reasons, we reverse and remand the matter to the circuit court.

BACKGROUND

Plaintiff, Michael H. Janowiak, was an employee and principal stockholder of a family business called Professional Education International, Inc. (PEI), along with his father, Robert Janowiak, and brother, John Janowiak. Defendant, Angelo Tiesi, was plaintiff's father's attorney for estate and tax planning, and was the trustee of an irrevocable trust, which held the stock of PEI, and of which plaintiff was a beneficiary. Plaintiff's father did not provide plaintiff with financial, strategic or operations information of PEI.

According to plaintiff, around 1997 plaintiff's brother John commenced a scheme to defraud plaintiff of his interest in PEI. Both John and the father, Robert, conspired to portray PEI's situation and future as dire and withheld material information to force plaintiff to sell his shares below their true value. In or about the fall of 2004, upon being informed of poor prospects for PEI, and the purported value of his shares, plaintiff contacted defendant, his trustee, attempting to ascertain the true value of his shares. Defendant refused to provide such information, informing plaintiff he would need the permission of Robert to disclose it. In turn, defendant resigned as trustee, representing to plaintiff that his resignation was based on a conflict of interest as Robert's attorney. In resigning, defendant requested that plaintiff sign a document under which plaintiff was appointed as successor trustee, and pursuant to which defendant was released from any liability, which plaintiff later signed.

Plaintiff maintains that defendant knew that Robert and John were planning to force plaintiff to sell his shares below value and also possessed material information regarding the actual value of plaintiff's shares and the true financial state of PEI. Defendant was also aware of

transactions by Robert, such as taking excessive compensation, making payments to family members and engaging in related party transactions which were intended to depress the value of PEI shares. Further, plaintiff maintains, defendant knew plaintiff was unaware of these facts.

In or about December 2004, Robert informed plaintiff he would commission a neutral evaluation of the value of plaintiff's stock. Subsequently, in May 2005 Robert provided plaintiff with a report prepared by Friedman & Associates, Ltd. (hereinafter the Friedman report), which falsely reflected poor prospects for PEI, did not disclose other material information about transactions impacting PEI and future revenue, and reflected a depressed value of plaintiff's shares at $1.01 million. Moreover, when plaintiff's accountant attempted to review documents relating to the Friedman report, no documents were provided. According to plaintiff, defendant was also aware of the Friedman report, and knew that Friedman refused to provide information to plaintiff's accountant. However, plaintiff fails to acknowledge how and when defendant became aware of the Friedman report.

On June 30, 2005, plaintiff sold his shares for $1.01 million, the value stated in the Friedman report. Thereafter, Robert amended his will to bequeath all of his shares in PEI to John, and when he died John received the shares. In July 2006, concerned that he had sold his shares for a grossly inadequate price, plaintiff ordered his own independent valuation report by Hilco Enterprise Valuation Services, LLC (Hilco). Hilco's report found serious flaws in the Friedman report and determined the value of plaintiff's shares at the time of sale was actually $2.924 million. In turn, plaintiff filed suit against defendant, the estate of Robert, PEI, and John.[1]

---

[1] The disposition of the other defendants is not relevant to this appeal.

Plaintiff's first amended complaint alleged claims against defendant in count I for fraud and in count IV for breach of fiduciary duty. Plaintiff maintains that as a result of defendant's failure to disclose the fraud by John and Robert he sold his shares in PEI to Robert for a grossly inadequate price. The complaint alleged that defendant resigned as trustee in a letter to plaintiff dated December 8, 2004, and that defendant "sought" the release of all liability on January 17, 2005. Plaintiff further alleged that while he signed the acceptance of office and release after this date, defendant inserted an effective date of December 31, 2004.

Defendant moved to dismiss under sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2008)) asserting, *inter alia*, that the release barred plaintiff's claims because defendant had resigned before plaintiff signed the release. The circuit court dismissed count I for fraud and count IV for breach of fiduciary duty, finding that because defendant had resigned, he did not owe plaintiff any fiduciary duty, including a duty of disclosure, on the date the release was signed. The circuit court's order further provided that, pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), there was no just reason to delay enforcement or appeal of the order. The instant appeal followed.

ANALYSIS

Plaintiff first maintains that the circuit court erred in granting dismissal based on the release he signed after defendant resigned as trustee. Section 2-619(a)(9) permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008). The

provision provides a means for disposing of issues of law or easily proved issues of fact at the outset of the case. *Lang v. Silva*, 306 Ill. App. 3d 960, 969, 715 N.E.2d 708, 714-15 (1999), citing *Zedella v. Gibson*, 165 Ill. 2d 181, 185, 650 N.E.2d 1000, 1002 (1995).

When ruling on a section 2-619 motion, the circuit court may consider pleadings, depositions, and affidavits. *Lang*, 306 Ill. App. 3d at 969, 715 N.E.2d at 715, citing *Zedella*, 165 Ill. 2d at 185, 650 N.E.2d at 1002. However, courts must "interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189, 680 N.E.2d 265, 270 (1997). Additionally, if evidentiary facts asserted in affidavits filed in support of the motion are not refuted by a counteraffidavit, those facts will be deemed admitted. *Lang*, 306 Ill. App. 3d at 969-70, 715 N.E.2d at 715, citing *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993).

When considering an appeal from a section 2-619 dismissal, reviewing courts must determine whether a genuine issue of material fact exists which should have precluded dismissal and, if no such issue exists, whether dismissal was proper as a matter of law. *Lang*, 306 Ill. App. 3d at 970, 715 N.E.2d at 715. Our review of dismissals under section 2-619 of the Code is *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368, 799 N.E.2d 273, 278 (2003); *Lang*, 306 Ill. App. 3d at 970, 715 N.E.2d at 715, citing *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 998, 671 N.E.2d 350, 441 (1996).

As noted, defendant contends that plaintiff's claims are barred by the release he signed which fully encompasses plaintiff's claims. Defendant maintains that he owed no fiduciary duties to plaintiff after his resignation became effective, which occurred before he tendered the

release and before plaintiff signed it, and, in any event, he did not fraudulently induce its execution by plaintiff. Plaintiff argues that the release is ineffective because defendant's resignation did not sever fiduciary liability for transactions begun during the fiduciary relationship. Plaintiff asserts that the defendant drafted and presented the release prior to his resignation without disclosing all material information, thus constituting fraudulent concealment, thereby negating the validity of the release. Plaintiff also contends that fraud in the inducement of a release renders the release ineffective. Plaintiff further maintains that, regardless of whether defendant still owed any fiduciary duties, under contract law a general release does not operate to bar claims not specified in the document.

We first address defendant's contention that the release was not presented until after his resignation. Notwithstanding this contention, plaintiff maintains that the release was drafted and presented to him prior to that date. However, plaintiff, by his December 31, 2008, affidavit acknowledged that defendant "tendered" the acceptance of office and release to plaintiff on or about January 17, 2005. Accordingly, we discern that the circuit court could properly find that the date of presentment was indeed January 17, 2005, as plaintiff conceded.

Nonetheless, the precise date the release was drafted and/or negotiated remains in dispute. Our review of the record reveals that plaintiff did indeed raise this issue below in his response to defendant's 2-619 motion directed against plaintiff's original complaint, and argued that the acceptance of office and release document was dated December 31, 2004. Plaintiff maintained that defendant had in fact prepared and backdated the release to bear the effective date of December 31, 2004. Further, this issue was also extensively argued before the court at the

hearing on the original motion to dismiss. Thus, the issue of when the release was prepared and/or negotiated was neither resolved nor forfeited.

We further perceive that the remaining concerns in this case are fraught with genuine issues of material fact. Notably, the parties dispute the identity of the party who inserted the date on the release. In his affidavit of December 31, 2008, plaintiff maintained that the acceptance of office and release was drafted and dated by defendant "as effective December 31, 2004." Conversely, in his affidavit of February 17, 2009, attached to his motion to dismiss the first amended complaint, defendant averred that plaintiff inserted the date. In response, plaintiff countered with his affidavit of March 17, 2009, that he did not "author or in any way change the document from the way it was tendered to [him]," and that he only placed his signature on the release. At the hearing on defendant's motion, the court was troubled by the apparent incongruity between the date the release was signed and the date appearing on the face of the document itself, noting that it seemed obvious defendant typed it because it was in the same typeface. Although the trial judge expressed concerns that the differing documents raised a "credibility" issue, the court made no finding as to who inserted the date. Nonetheless, the court and both parties treated the date of plaintiff's execution of the release as its effective date, and the court based its dismissal on this erroneous assumption. Thus, the effective date of the release, a central concern in this case, presents a genuine issue of material fact which remains unresolved.

The factual dispute as to who inserted the date impacts the efficacy of the document because the date on a contract generally controls as its effective date. The court's determination

as to the effective date of the release was not only improper given the disputed facts underlying that decision, but was also legally erroneous. Although there is a dearth of recent precedent, perhaps because the rule is so rudimentary, Illinois courts have long recognized that "[u]ndoubtedly a contract may have a retrospective operation." *Bartlett v. Wheeler*, 96 Ill. App. 342, 346 (1901), *aff'd*, 195 Ill. 445, 63 N.E. 169 (1902). However, the principle of retrospective application is to be determined from the contract itself. *Bartlett*, 96 Ill. App. at 346. "[I]t is elementary that ordinarily a contract speaks from the day of its date, regardless of when it was executed and delivered." *Monahan v. Fidelity Mutual Life Insurance Co.*, 148 Ill. App. 171, 174 (1909), *aff'd*, 242 Ill. 488, 90 N.E. 213 (1909) (policy of life insurance). Further, this court has held:

> "It is of common occurrence in connection with deeds, leases, and other contracts that, while they are not in effect at all and have no legal existence until delivered, yet, in respect of the date of delivery, they, in point of commencement, relate back or commence in the future. Such relation back or forward contravenes no principle of law and is determined by the intent of the parties as deduced from the instrument itself." *Monahan*, 148 Ill. App. at 174.

See also *In re Estate of Graff*, 117 Ill. App. 3d 900, 902, 453 N.E.2d 1150, 1152 (1983) (the decedent's signature on note constituted *prima facie* evidence that the contents of the note, including the fact that it was dated a week prior to his signature, were known to him, and his act of signing the note was an adoption and ratification of the effective date of the note); *Johnson v. Prosperity L. & B. Ass'n*, 94 Ill. App. 260, 266 (1900) ("while January 27th is shown by the

evidence to have been the actual date of execution and delivery of the deed and contract, yet the period limited by the terms of the contract *** is to be reckoned from the date written in the instrument"); *Grubb & Ellis Co. v. Bradley Real Estate Trust*, 909 F.2d 1050, 1054 (7th Cir. 1990). Thus, the date of execution of the release does not necessarily control, and, typically, the date on the release would constitute the effective date. Here, again, the parties dispute who inserted the date of December 31, 2004, and the effective date of the release remains unresolved.

Given the myriad disputed factual issues concerning the release, it is axiomatic that dismissal was improper. "The purpose of a section 2-619 motion to dismiss is to dispose of a case on the basis of issues of law or easily proved issues of fact." *Hertel v. Sullivan*, 261 Ill. App. 3d 156, 160, 633 N.E.2d 36, 39 (1994). Nonetheless, a court may not decide a disputed question of fact if a jury demand is filed. *Hertel*, 261 Ill. App. 3d at 160, 633 N.E.2d at 39. The question of whether there was fraud in obtaining a release is generally one of fact. *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 33, 801 N.E.2d 1103, 1112 (2003). Section 2-619(c) provides:

> "If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice to the right to raise the subject matter of the motion by answer and *shall* so deny it if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in apt time." (Emphasis added.) 735 ILCS 5/2-619(c) (West 2008).

"When facts are in contention in a case where one of the parties is entitled to a jury trial, and the other party has made a timely jury demand, the court is bound to deny the section 2-619 motion." *Daiwa Bank Ltd. v. La Salle National Trust, N.A.*, 229 Ill. App. 3d 366, 384, 593 N.E.2d 105, 116 (1992).

Though neither party raises this point, under our *de novo* review we discern our precedent instructs that because plaintiff filed a jury demand when he commenced the instant litigation, the circuit court could not determine the disputed questions of fact concerning the release. If the effective date of the release was prior to defendant's actual resignation, or if it was established that defendant drafted and/or negotiated the release prior to his resignation, defendant's alleged actions presumably would be subject to scrutiny as a fiduciary with the attendant presumption of fraud. Defendant's conduct would then be adjudicated under the heightened standard applicable to fiduciaries, thereby shifting the burden of proof. "If a petitioner shows that a fiduciary relationship exists, any transaction between parties in which the agent profits is typically presumed to be fraudulent and the agent has the burden of proving by clear and convincing evidence that the transaction was fair and equitable and did not result from the agent's undue influence over the principal." *In re Estate of Miller*, 334 Ill. App. 3d 692, 698, 778 N.E.2d 262, 267 (2002), citing *In re Estate of Teall*, 329 Ill. App. 3d 83, 87, 768 N.E.2d 124, 129 (2002); *Lemp v. Hauptmann*, 170 Ill. App. 3d 753, 757, 525 N.E.2d 203, 206 (1988). See also *Prueter v. Bork*, 105 Ill. App. 3d 1003, 1005, 435 N.E.2d 109, 112 (1981) (where there is a fiduciary relationship, the burden shifts to the fiduciary to prove the fairness of the transaction).

Moreover, even if the release was not drafted or effective until after defendant's

resignation, genuine issues of material fact remain concerning whether there was fraud in the inducement of the release, which could invalidate the release in its entirety. Where such facts are alleged, an issue of material fact exists, which if proven, would likely defeat the affirmative defense of prior release. See *Carlile v. Snap-On Tools*, 271 Ill. App. 3d 833, 840-42, 648 N.E.2d 317, 322-23 (1995). Here, plaintiff clearly alleged defendant's silence and concealment of the scheme to defraud plaintiff during the time defendant served as trustee, and thus a fiduciary, and that defendant's concealment induced plaintiff to later sign the release.

The abiding principle universally holds that when a motion to dismiss is based upon a release, the burden then shifts to the plaintiff to sufficiently allege and prove that a material issue of fact exists which would invalidate the release. *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 23, 799 N.E.2d 756, 763 (2003), citing *Meyer v. Murray*, 70 Ill. App. 3d 106, 114, 387 N.E.2d 878, 884 (1979). See also *McCormick v. McCormick*, 118 Ill. App. 3d 455, 466, 455 N.E.2d 103, 112 (1983), citing *Blaylock v. Toledo, Peoria & Western R.R. Co.*, 43 Ill. App. 3d 35, 37, 356 N.E.2d 639, 641 (1976). Precedent further instructs that the defenses that may be asserted to vitiate a release include fraud in the execution, fraud in the inducement, mutual mistake and mental incompetence. *McCormick*, 118 Ill. App. 3d at 466, 455 N.E.2d at 112, citing *Blaylock*, 43 Ill. App. 3d at 37, 356 N.E.2d at 641. We recognize that there is a high standard of specificity for pleading claims of fraud. *Cwikla*, 345 Ill. App. 3d at 31, 801 N.E.2d at 1110. "The facts must be [pled] with sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer." *Cwikla*, 345 Ill. App. 3d at 31, 801 N.E.2d at 1110.

11

In order to constitute fraud in the inducement, the defendant must have made a false representation of a material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act. *Phil Dressler & Associates, Inc. v. Old Oak Brook Inv. Corp.*, 192 Ill. App. 3d 577, 584, 548 N.E.2d 1343, 1347 (1989). " '[F]raud also may consist of the intentional omission or concealment of a material fact under circumstances creating an opportunity and duty to speak.' " *Thornwood, Inc.*, 344 Ill. App. 3d at 25, 799 N.E.2d at 765, quoting *H.K. Warner v. Lucas*, 185 Ill. App. 3d 351, 354, 541 N.E.2d 705, 706 (1989). " 'In order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak.' " *Thornwood, Inc.*, 344 Ill. App. 3d at 25, 799 N.E.2d at 765, quoting *First Midwest Bank, N.A. v. Sparks*, 289 Ill. App. 3d 252, 260, 682 N.E.2d 373, 379 (1997). Significantly, "in a confidential or fiduciary relationship, the dominant party's silence alone may constitute fraudulent concealment." *Thornwood, Inc.*, 344 Ill. App. 3d at 25, 799 N.E.2d at 765, quoting *Melko v. Dionisio*, 219 Ill. App. 3d 1048, 1061, 580 N.E.2d 586, 593 (1991).

It is well settled that a fiduciary relationship exists between trustee and beneficiary as a matter of law. *McCormick v. McCormick*, 118 Ill. App. 3d 455, 466, 455 N.E.2d 103, 113 (1983). Under the Fiduciary Obligations Act, a "fiduciary" includes a trustee under any trust. 760 ILCS 65/1(1) (West 2006). The Act further specifies that "[i]n any case not provided for in this Act the rules of law and equity, including the law merchant and those rules of law and equity relating to trusts, agency, negotiable instruments and banking, shall continue to apply." 760 ILCS 65/11 (West 2006). The relationship between trustee and beneficiary is such that the duties

rest upon the trustee to serve the interests of the beneficiary with complete loyalty, excluding all self-interest. *Collins v. Nugent*, 110 Ill. App. 3d 1026, 1036, 443 N.E.2d 277, 284 (1982).

Prevailing authorities hold that a release between a trustee and a beneficiary, like all transactions growing out of a fiduciary relationship, is subject to the closest scrutiny. *McCormick*, 118 Ill. App. 3d at 466, 455 N.E.2d at 113, citing *Pennington v. Jones*, 46 Ill. App. 3d 65, 360 N.E.2d 566 (1977). "Fiduciaries are not prohibited from having *** direct dealings with their beneficiaries, but such transactions are subject to special scrutiny by the courts, and the burden is on the fiduciary to show that the transaction was fair." *Home Federal Savings & Loan Ass'n of Chicago v. Zarkin*, 89 Ill. 2d 232, 245-46, 432 N.E.2d 841, 848 (1982). In *Collins*, the court held that important factors in determining whether a particular transaction is fair include a showing by the fiduciary (1) that he has made a free and frank disclosure of all the relevant information which he had; (2) that the consideration was adequate, and (3) that the principal had competent and independent advice before completing the transaction. *Collins*, 110 Ill. App. 3d at 1038, 443 N.E.2d at 285.

Defendant argues that, because he had already resigned at the time he presented the release to plaintiff, there was no fiduciary duty and, in any event, there was no fraudulent concealment. In response, plaintiff maintains that where material information is withheld, and a transaction begins before a fiduciary resigns but concludes after the fiduciary's resignation, the fiduciary may still be liable.

As the parties implicitly recognize, there is a paucity of precedent imposing trustee liability for transactions commenced during the fiduciary relationship, but concluded after the

fiduciary's resignation. Yet, the common law is replete with examples of breaches of fiduciary duty after resignation by corporate officers and partners. Notably, plaintiff cites to *Golden v. McDermott, Will & Emery*, 299 Ill. App. 3d 982, 702 N.E.2d 581 (1998), *appeal denied*, 182 Ill. 2d 549, 707 N.E.2d 1239 (1999), where we determined that a release arising out of a fiduciary relationship is voidable if one party withheld facts that were material to the agreement. Although the circuit court found *Golden* distinguishable because it involved parties winding up a partnership, we nonetheless find its rationale instructive.

Plaintiff also cites to *Comedy Cottage, Inc. v. Berk*, 145 Ill. App. 3d 355, 495 N.E.2d 1006 (1986), where a former corporate officer was held to have breached his fiduciary duty after his resignation. There, we determined that even assuming *arguendo* the former officer did not begin competing for the lease until after his resignation, he remained bound by his fiduciary duty because his acquisition of the lease was based upon knowledge acquired during his employment. Thus, under the circumstances, the trial court did not err in finding that the former officer breached his fiduciary duty.

An identical result obtained in *Cwikla*, where a release executed during a former treasurer's departure from a corporation and the president's purchase of former treasurer's shares, was determined to be voidable and thus no bar to a claim for breach of fiduciary duty against the former treasurer. In *Cwikla*, the president alleged that he would not have entered into the release and purchased the shares had he known certain material facts. We found that the former treasurer had the duty of full disclosure during those settlement negotiations due to the fiduciary relationship. *Cwikla*, 345 Ill. App. 3d at 31, 801 N.E.2d at 1110.

14

Likewise instructive is *Dowell v. Bitner*, 273 Ill. App. 3d 681, 652 N.E.2d 1372 (1995), where a partner, who was a corporate officer, was determined to be subject to liability for transactions that concluded after his resignation but began during his employment. Judgment was improvidently granted at the conclusion of the plaintiff's case based on the trial court error in rejecting evidence of breach through events continuing after the defendant's resignation but beginning before his departure. The *Dowell* court held that, although a corporate officer owes the corporation no fiduciary duty after he resigns, the officer's resignation will not sever liability for transactions completed after termination of the party's association with the corporation if the transactions began during the existence of the relationship or were founded on information acquired during the relationship. *Dowell*, 273 Ill. App. 3d at 691, 652 N.E.2d at 1379-80, citing *Dangeles v. Muhlenfeld*, 191 Ill. App. 3d 791, 796, 548 N.E.2d 45, 49 (1989).

Interestingly, defendant's sole argument against a similar finding here is that he is a trustee, and not a corporate officer or a partner, and that the "winding up" factual circumstance of *Golden* is inapplicable. Although there may be a dearth of precedent involving trustees recognizing a continuing fiduciary duty for ongoing transactions concluding after a trustee's resignation, we discern no support for the assertion that a trustee does not have similar liability for transactions begun during the fiduciary relationship but concluding after a trustee's resignation. Trustees are but one example of a myriad of fiduciaries including guardians, executors, administrators, agents, attorneys, partners, joint adventurers, and the directors and officers of corporations. *See Graham v. Mimms*, 111 Ill. App. 3d 751, 760-61, 444 N.E.2d 549, 555 (1982), citing 5 A. Scott, Trusts § 495 at 3534 (3d ed. 1967). Each of these fiduciaries owes

a duty of loyalty to the person or entity for whom the fiduciary is acting. *Graham*, 111 Ill. App. 3d at 761, 444 N.E.2d at 555-56, citing *Dick v. Albers*, 243 Ill. 231, 236, 90 N.E. 683, 685 (1909); A. Scott, *The Fiduciary Principle*, 37 Cal. L. Rev. 539, 541 (1949). One of the functions of this duty of loyalty is to impose an affirmative obligation to disclose certain information that falls within the scope of the fiduciary relationship. *Graham*, 111 Ill. App. 3d at 761, 444 N.E.2d at 556, citing D. Dobbs, Remedies § 10.1, at 653 (1973).

Moreover, as we have long recognized, these are general principles and the duty of loyalty is more intense in some fiduciary relationships than others, specifically in trusts. *Graham*, 111 Ill. App. 3d at 761, 444 N.E.2d at 556, citing 5 A. Scott, Trusts § 495, at 3534 (3d ed. 1967); Restatement of Restitution § 190, Comment *a*, at 781 (1937). "The duty of loyalty owed by a trustee to a beneficiary in a trust relationship is more intense than in any other fiduciary relationship." *Prueter*, 105 Ill. App. 3d at 1005, 435 N.E.2d at 111-12. See also *Sauvage v. Gallaway*, 329 Ill. App. 38, 44, 66 N.E.2d 740, 743 (1946) ("A fundamental duty of a trustee is loyalty to his *cestuis*, and [such] duty of loyalty is more intense *** than in any other fiduciary relationship"). " '[A] trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith.' " *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 615, 863 N.E.2d 743, 21 (2007), quoting *In re Estate of Muppavarapu*, 359 Ill. App. 3d 925, 929, 836 N.E.2d 74, 77 (2005); *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65, 74, 829 N.E.2d 818, 828 (2005); *Giagnorio v. Emmett C. Torkelson Trust*, 292 Ill. App. 3d 318, 325, 686 N.E.2d 42, 46 (1997); Restatement (Second) of Trusts §2,

Comment *b* (1959); Restatement (Second) of Trusts §170 (1959). See also *Obermaier v. Obermaier*, 128 Ill. App. 3d 602, 607, 470 N.E.2d 1047, 1051 (1984) (a trustee owes the highest duty to his beneficiary to fully and completely disclose all material facts when he is dealing with the trust). Thus, it can be said that a trustee is held to an even more intense duty of loyalty than in any other fiduciary relationship. We find no support for the assertion that a trustee would not be subject to the same, if not more intense, duties of loyalty and disclosure of information as other fiduciaries.

Defendant studiously relies upon *McCormick*, 118 Ill. App. 3d at 27, 799 N.E.2d at 767, where a release obtained by a trustee from his beneficiary after he resigned was given effect, as "directly on point and controlling." In *McCormick*, the instrument released all claims arising out of the trustee's management of the trust. At the time the release was signed the fiduciary relationship no longer existed as a matter of law. *McCormick*, 118 Ill. App. 3d at 466, 455 N.E.2d at 113, citing *Collins*, 110 Ill. App. 3d 1026, 443 N.E.2d 277. However, we suggest that defendant interprets the holding of *McCormick* too broadly. A careful reading of *McCormick* reflects that we held merely that where a release follows a fiduciary's resignation, there is no *presumption* of fraud, which is normally applied to fiduciaries. *McCormick*, 118 Ill. App. 3d at 466, 455 N.E.2d at 112. Nonetheless, we noted in *McCormick* that fraud in the execution or fraud in the inducement would vitiate the release (*McCormick*, 118 Ill. App. 3d at 466, 455 N.E.2d at 112); however, the plaintiff in *McCormick* did not allege facts to establish these defenses (*McCormick*, 118 Ill. App. 3d at 466, 455 N.E.2d at 112). Thus, because allegations of fraud were absent, the release was effective.

Conversely, here we are presented with precisely such allegations of fraud absent in *McCormick*, which may indeed serve to vitiate the instant release. Plaintiff alleged that in December of 2004, defendant knew that Robert and John were planning to force plaintiff to sell his shares, was possessed of material information regarding the true value of plaintiff's shares and the true financial state of PEI, and also knew plaintiff was unaware of these facts. Plaintiff alleged in count I that defendant was aware of the Friedman report and knew that Friedman refused to provide material information to plaintiff's accountant, and knew of the scheme to defraud plaintiff and withheld this information. Further, plaintiff alleged in count IV that defendant assisted in the fraudulent actions of Robert and John, failed to disclose material information to plaintiff, and then resigned without fully disclosing all material information to plaintiff. Thus, the allegations in the first amended complaint precisely typified the allegations of fraud that may serve to vitiate a release obtained by a trustee from his beneficiary even after resignation.

Notwithstanding the critical distinction from *McCormick*, defendant maintains that plaintiff had the right to inspect the corporate records, due to his position as a shareholder, and that his failure to do so was an intervening proximate cause of his own injury. Defendant's argument is not well-grounded. The elements that must be alleged to state a claim for fraud are: " '(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the

statement was made led to that person's injury.' " *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 529, 675 N.E.2d 897, 905 (1996), quoting *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542-43, 607 N.E.2d 194, 198 (1992). "To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 747, 910 N.E.2d 1134, 1158 (2009). Proximate cause is a question of fact to be decided by a jury. *Hooper v. County of Cook*, 366 Ill. App. 3d 1, 7, 851 N.E.2d 663, 669 (2006), citing *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995). "The issue of proximate causation should never be decided as a matter of law where reasonable persons could reach different results." *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 753, 899 N.E.2d 1252, 1262 (2008), citing *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 210, 850 N.E.2d 183, 192 (2006). Plaintiff has clearly alleged proximate cause sufficient to state a claim for both fraud and breach of fiduciary duty, in that he relied on the fraudulent misrepresentation and concealment by defendant to sign the release and later sell his shares.

Further, our precedent instructs that "[t]he test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence." *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 317, 45 N.E.2d 665, 675 (1942). See also *Kirschbaum v. Village of Homer Glen*, 365 Ill. App. 3d 486, 495, 848 N.E.2d 1052, 1059 (2006). Here, viewing the allegations in the light most favorable to plaintiff,

as we must, we find that defendant could have reasonably anticipated that plaintiff would not have sought the corporate records or attempted to discover the fraud on his own, due to defendant's concealment of the fraud and breach of his fiduciary duty. It was entirely foreseeable that plaintiff would rely on defendant's stated reasons for not providing the information regarding his stock value (necessity of obtaining plaintiff's father's permission as settlor of the trust) and reason for his resignation (conflict in representing plaintiff's father), as defendant was the trustee of his trust.

Defendant maintains the superseding proximate cause was plaintiff's own negligence in not searching for the information on his own. Yet, defendant provides no authority for the bold assertion that a trust beneficiary has a duty to disregard his own trustee's representations and ferret out information for himself. Our supreme court rejected a similar argument in *Soules v. General Motors Corp.*, 79 Ill. 2d 282, 402 N.E.2d 599 (1980). In *Soules*, the plaintiff investor brought an action for fraudulent and negligent misrepresentation by the defendant corporation, alleging that the franchisee's periodic financial reports, which it was required to submit to defendant, were false and known by defendant to be such. The defendant argued that plaintiff, as a corporate director, had no right to rely on any alleged misrepresentation by the defendant. *Soules*, 79 Ill. 2d at 286, 402 N.E.2d at 601. The supreme court held that "[t]his question is to be answered while viewing the representation in light of all the facts of which plaintiff had actual knowledge as well as those of which he 'might have availed himself by the exercise of ordinary prudence.'" *Soules*, 79 Ill. 2d at 286-87, 402 N.E.2d at 601, quoting *Schmidt v. Landfield*, 20 Ill. 2d 89, 94, 169 N.E.2d 229, 231 (1960), quoting *Dillman v. Nadlehoffer*, 119 Ill. 567, 577, 7 N.E.

88, 91 (1886). The court reasoned that, regardless of plaintiff's access to such materials as a corporate officer, examination of the reports would not have revealed that the financial reports were false. *Soules*, 79 Ill. 2d at 287, 402 N.E.2d at 601. The court further held, "[c]onsequently, based upon the limited record before us, we cannot say that plaintiff's reliance on the truth of defendant's representations regarding the continuing financial requirements was unjustified." *Soules*, 79 Ill. 2d at 287, 402 N.E.2d at 601.

In the instant case, as in *Soules*, the fact that plaintiff had access to corporate records due to his position as a shareholder does not diminish plaintiff's rightful reliance on the representations made by defendant as his trustee, especially with the attendant high fiduciary duties owed to plaintiff. Also as in *Soules*, any examination of the corporate records would not have revealed the fraudulent scheme. Even assuming plaintiff had obtained the corporate records, as defendant strenuously argues he should have done, the records would not have revealed the fraudulent scheme to undervalue plaintiff's shares. The scheme as alleged by plaintiff was revealed only much later after an independent appraisal by plaintiff, utilizing information not contained in the corporate records. Further, any failure to attempt to obtain such information was caused by defendant's fraudulent conduct in concealing the scheme to defraud him. Instead of alerting plaintiff to the ongoing scheme, defendant merely provided the excuse that he needed permission from plaintiff's father as settlor to provide the information regarding plaintiff's shares. Also, defendant's stated reason for his resignation was solely because of a conflict in representing plaintiff's father. Such seemingly innocuous explanations easily lend themselves to the conclusion that plaintiff was justified in relying on defendant's representations.

Additionally, we note the well-established principle that a trustee cannot simply delegate his own duty to provide information to his beneficiary or force the beneficiary to find other avenues for information he is rightfully owed. "The law does not contemplate that a beneficiary of a trust must set in motion the processes of a court *** in order to obtain what he is entitled to." *Johnson v. Sarver*, 350 Ill. App. 565, 579, 113 N.E.2d 578, 584 (1953). As the long-established high duties of a trustee were explained by the court in *In re the Trusteeship Under the Last Will and Testament of Hartzell*, 43 Ill. App. 2d 118, 192 N.E.2d 697 (1963):

> "Although purely ministerial powers or duties may be delegated by a trustee, generally a trustee may not delegate powers and duties involving an exercise of judgment and discretion. A trustee must use care and diligence in the discharge of his powers and duties. He is held to a high standard of conduct and must exercise the utmost or highest good faith in the administration of the trust." *Hartzell*, 43 Ill. App. 2d at 134, 192 N.E.2d at 706.

Adherence to fundamental principles dictates that "[a] trustee is held to a high standard of conduct and must exercise the utmost or highest good faith in the administration of the trust," and that "[a]cting with good faith in administering the trust means that the trustee must act honestly and with undivided loyalty to the trust, not merely with the standard of the workaday world but with the most sensitive degree of honor." *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill. App. 3d 457, 463-64, 898 N.E.2d 744, 751 (2008). Here, under our *de novo* review we are unable to find any superseding proximate cause as a matter of law sufficient to dismiss plaintiff's cause of action.

In the case *sub judice*, plaintiff's complaint and his affidavits sufficed to create genuine questions of material fact. See *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 983, 841 N.E.2d 465, 477 (2005), citing *Pothier v. Chicago Transit Authority*, 238 Ill. App. 3d 702, 710, 606 N.E.2d 531, 537 (1992) (the plaintiffs' uncontradicted affidavit filed in response to a section 2-619 motion to dismiss stating that she relied to her detriment on the defendant's representations created a genuine issue of fact, defeating the motion to dismiss). Moreover, plaintiff's affidavit of March 17, 2009, which was not subsequently controverted by defendant in a counteraffidavit, more than sufficiently provides a genuine issue of material fact as to proximate cause. Plaintiff avers:

> "Angelo Tiesi was the trustee of the trust that controlled my stock. He was also my father's personal attorney. Mr. Tiesi was very knowledgeable about the affairs of the company and I relied upon him to look out for my interests, just as I relied on my father and brother to be fair with me. I couldn't look out for myself, because they controlled the company and wouldn't let me see any of the financial information. When Angelo Tiesi resigned as a trustee he only told me that it had something to do with his representing my father. I had no idea that he had withheld from me that they were planning to cheat me out of my interest in the family business. I would never have signed a release, and I would never have agreed to go ahead with the sale, if I had known what was really going on."

As noted, we have determined that because of all the disputed fact issues concerning the release and defendant's alleged commission of fraud and breach of his fiduciary duties in

obtaining the release, dismissal on the basis of the release was improper. Any additional fact issues regarding proximate cause also militate in favor of reversing the dismissal.

Even assuming *arguendo* there was no fiduciary duty owed at the time of the release, additionally we find that dismissal on the basis of the release may nevertheless be improper because the release arguably could be ineffective to bar plaintiff's claims. A release is a contract and, therefore, is governed by contract law. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991), citing *Polo National Bank v. Lester*, 183 Ill. App. 3d 411, 414, 539 N.E.2d 783, 785 (1989). General words of release are restrained in effect by the specific recitals contained in the document. *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 614, 863 N.E.2d at 18, citing *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill. App. 3d 947, 951, 561 N.E.2d 239, 242 (1990). "Releases are strictly construed against the benefitting party and must spell out the intention of the parties with great particularity." *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 614, 863 N.E.2d at 18, citing *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 395, 493 N.E.2d 1022, 1029 (1986); *Stratman v. Brent*, 291 Ill. App. 3d 123, 137, 683 N.E.2d 951, 961 (1997). "The intention of the parties controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement." *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 614, 863 N.E.2d at 18, citing *Adams v. American International Group, Inc.*, 339 Ill. App. 3d 669, 676, 791 N.E.2d 26, 32 (2003); *Doctor's Associates, Inc., v. Duree*, 319 Ill. App. 3d 1032, 1045, 745 N.E.2d 1270, 1282 (2001).

It is well settled that where the releasing party was unaware of other claims, general

releases are restricted to the specific claims contained in the release agreement. *Farm Credit Bank*, 144 Ill. 2d at 447, 581 N.E.2d at 667. However, where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim. *Farm Credit Bank*, 144 Ill. 2d at 447, 581 N.E.2d at 667. Therefore, a release will not be construed to defeat a valid claim that was not within the contemplation of the parties at the time the agreement was executed, and general words of release are inapplicable to unknown claims. *Farm Credit Bank*, 144 Ill. 2d at 447-48; *Thornwood, Inc.*, 344 Ill. App. 3d at 21.

The language of the release alleged in the complaint is as follows:

"I do hereby release, hold harmless and indemnify Angelo F. Tiesi, his heirs and assigns from any and all liability relating to his acts or failure to act as trustee of the Michael H. Janowiak Trust."

In *Thornwood, Inc.*, 344 Ill. App. 3d 15, 799 N.E.2d 756, the defendant law firm's general release contained sweeping language, purporting to release all claims of any sort. *Thornwood, Inc.*, 344 Ill. App. 3d at 22, 799 N.E.2d at 763. We held the release did not encompass the claims made by the plaintiff because those claims were unknown to him when he signed the release, and thus the claims could not have been in the contemplation of the parties when the release was signed. *Thornwood, Inc.*, 344 Ill. App. 3d at 22, 799 N.E.2d at 763. Further, this court took note that the claims may have been contemplated by the law firm, which crafted the release in an effort to protect itself from all potential claims. *Thornwood, Inc.*, 344 Ill. App. 3d at 22, 799 N.E.2d at 763. However, knowledge by one party, where the other party lacks knowledge, does

25

not bring the claim within the contemplation of the parties. *Thornwood, Inc.*, 344 Ill. App. 3d at 22, 799 N.E.2d at 763, quoting *Todd v. Mitchell*, 168 Ill. 199, 204, 48 N.E. 35 (1897) (" 'The breach of the covenant of warranty could not have been in contemplation of the parties, because unknown to the appellant at the time *** ' "). We explained as follows:

> "In many cases, a release makes clear on its face what claims were within the contemplation of the parties at the time the release was given. In other instances, the release provides very general language that does not indicate with any clear definition what claims were within the contemplation of the parties. In such cases, 'the courts will restrict the release to the thing or things intended to be released and will refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties.' [Citation.] In other words, general releases do not serve to release unknown claims, which the party could not have contemplated releasing when it gave the release. [Citation.]" *Thornwood, Inc.*, 344 Ill. App. 3d at 21, 799 N.E.2d at 762

> Concerning the release of fiduciary duties, we further explained:

> "If the acts had been disclosed or were otherwise within Thornton's knowledge and Thornton had then agreed to the release, it would be binding. If, however, those acts were concealed from Thornton in violation of [defendant's] fiduciary duties, the release may not prevent Thornton's claims." *Thornwood, Inc.*, 344 Ill. App. 3d at 27, 799 N.E.2d at 767.

We further held that if in fact fraud was found, the releases may not bar claims, regardless of whether the defendant had a fiduciary duty. See *Thornwood, Inc.*, 344 Ill. App. 3d at 26, 799

N.E.2d at 766. Thus, under *Thornwood*, the exact timing of defendant's resignation and termination of any fiduciary duty would not serve to insulate him from liability if indeed he procured the release through fraud, as alleged.

Although we have located no case precisely on point factually involving a release of a trustee after the trustee's resignation, we find instructive *Fuller Family Holdings, LLC*, 371 Ill. App. 3d 605, 863 N.E.2d 743, where we held a release executed contemporaneously with the termination of a trust in a settlement agreement did not release a breach of fiduciary duty claim against the trustee. In *Fuller Family Holdings, LLC*, the release in the settlement agreement provided that the trust beneficiaries released:

" 'any and all claims *** arising out of the determination of the Trust's termination date, and the termination of the Trust *** including, but not limited to, The Northern's transfer of the Property upon termination to the Fuller Family Holdings LLC, *** and The Northern's transfer of the cash and marketable securities *** provided, however, that this release shall not apply to any claims arising from a breach of the provisions of this Settlement Agreement.' " *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 614, 863 N.E.2d at 19.

In *Fuller*, we determined that the breach of fiduciary duty claim did not fall into any of these categories. Thus, the release did not include the breach of fiduciary duty claim, nor did the agreement indicate the parties' intent to release the claim, and thus the circuit court erred in finding that the settlement agreement released the breach of fiduciary duty claim. *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 615, 863 N.E.2d at 20. Further buttressing our conclusion

was the fact that a breach of fiduciary duty claim does not belong to the trust, and does not arise from the trust agreement, but rather arises from the fiduciary relationship between the trustee and the beneficiary. *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 615, 863 N.E.2d at 21-22.

Similarly here, the release appears to be general as it does not specify which claims are being released. It purports to release "any and all liability relating to his acts or failure to act as trustee," without specifying claims regarding failure to give information pertaining to the specific transaction of plaintiff's sale of his shares. Also, even assuming *arguendo* the release is not general, it refers to acts or failure to act "as trustee," but the claims here do not arise from actions as trustee in relation to the trust corpus. Rather, plaintiff's claims arise from defendant's fiduciary relationship with plaintiff and are based on defendant's alleged breach of his duties as a fiduciary to plaintiff and his commission of fraud. Thus, consistent with our holding in *Fuller Family Holdings, LLC*, it does not necessarily follow that an act or failure to act as trustee encompasses breach of fiduciary and fraud claims, as these are not actions or failures to act as trustee of the trust corpus. Furthermore, the release is governed by the parties' intent, and plaintiff clearly alleges that it was not his intent to release such claims.

In sum, we hold that there are numerous genuine issues of material fact concerning the drafting and negotiation of the release and its effective date which should have prevented dismissal on the basis of the release. Further, plaintiff has sufficiently stated genuine issues of material fact that may serve to vitiate the release in this case, including fraudulent concealment, fraud in the inducement, and failure to give a full and frank disclosure by a fiduciary. We additionally determine that because the language of the release is broad and general, it may not

contemplate release of breach of fiduciary and fraud claims. Even if the release was not a general release, plaintiff has alleged he did not intend to release breach of fiduciary duties and fraud claims thereby creating an additional factual issue. Thus, plaintiff's claims may not be barred by the release given the genuine issues of material fact we have discussed. The dismissal of plaintiff's claims pursuant to section 2-619 of the Code is reversed.

CONCLUSION

For the following reasons, we reverse the judgment of the circuit court and remand the matter for further proceedings.

Reversed and remanded.

FITZGERALD SMITH and LAVIN, JJ., concur.

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case)<br><br>MICHAEL JANOWIAK,<br><br>                Plaintiff-Appellant,<br><br>v.<br><br>ANGELO TIESI,<br><br>                Defendant-Appellee. |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | 1-09-1273<br>Appellate Court of Illinois<br>First District, FIFTH Division<br><br>June 30, 2010<br>(Give month, day and year) |
| JUSTICES | PRESIDING JUSTICE TOOMIN delivered the opinion of the court:<br><br>FITZGERALD SMITH and LAVIN, JJ.,          concur [s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable   Barbara McDonald, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Plaintiff-Appellant,              Richard C. Leng<br>                                 Law Offices of Richard C. Leng<br>                                 330 West Main Street<br>                                 Barrington, IL<br><br>Defendant-Appellee,            Michael L. Shakman<br>                                 Diane Klotnia<br>                                 Daniel M. Feeney<br>                                 Alexandra Block<br>                                 Miller Shakman & Beem LLP<br>                                 180 N LaSalle, Suite 3600<br>                                 Chicago, IL 60601<br>                                 312/263-3700 |